**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                              |   |                        |
|------------------------------|---|------------------------|
|                              | : |   PRISONER             |
| CYRUS GRIFFIN                | : |   3:03CV1029(DJS)(TPS) |
| *Plaintiff,*                 | : |                        |
|                              | : |                        |
| VS.                          | : |                        |
|                              | : |                        |
| CAPTAIN MICHAEL CLEAVER, ET AL. | : |                     |
| *Defendants.*                | : |   FEBRUARY 24, 2004    |

## <u>MOTION TO DISMISS</u>

Pursuant to F.R.C.P. Rule 12(b), the defendants respectfully move to dismiss the plaintiff's complaint.  The plaintiff sues the defendants pursuant to Title 42 USC § 1983, apparently alleging that the defendants violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Specifically, the plaintiff appears to contest the issuance of  two disciplinary reports, the subsequent placement in the Restrictive Housing Unit as punitive segregation, and the subsequent designation of security risk group affiliation, apparently alleging, among other things, that the reports were unfairly issued, and that the disciplinary hearings were unfairly conducted in that the inmate's advocate was not present at the hearing, that the inmate was found guilty on the basis of the testimony of confidential informants, and that the inmate was not permitted to call some witnesses.  The plaintiff seems to sue the defendants in both their individual and official capacities.  The plaintiff seems to seek injunctive relief, such as his release to the general population at Northern Correctional Institution and the expunging of the aforementioned disciplinary convictions from his institutional record, and compensatory and punitive money damages.

The defendants contend that there is no legal merit to the plaintiff's claims, as they are barred by the Eleventh Amendment, the defendants are entitled to sovereign immunity, statutory immunity and qualified immunity, and the plaintiff has no constitutionally protected right to a specific classification.  A memorandum of law in support of this motion is attached hereto.

DEFENDANTS,
Captain Michael Cleaver, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:_____
Kathleen A. Keating
Assistant Attorney General
Federal Bar No. ct25247
110 Sherman Street
Hartford, CT  06105
Telephone:  (860) 808-5450
E-mail:  kathleen.keating@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 24th day of February, 2004, to:

Cyrus Griffin, Inmate No. 262493
Northern Correctional Institution
287 Bilton Road, P.O. Box 665
Somers, CT  06071

_____
Kathleen A. Keating
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | PRISONER |
| CYRUS GRIFFIN | : | 3:03CV1029(DJS)(TPS) |
| *Plaintiff,* | : | |
| | : | |
| VS. | : | |
| | : | |
| CAPTAIN MICHAEL CLEAVER, ET AL. | : | |
| *Defendants.* | : | FEBRUARY 24, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION TO DISMISS**

The plaintiff sues the defendants pursuant to Title 42 USC § 1983, apparently alleging that the defendants violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, the plaintiff appears to contest the issuance of two disciplinary reports, the subsequent placement in the Restrictive Housing Unit as punitive segregation, and the subsequent designation of security risk group affiliation alleging, among other things, that the reports were unfairly issued, and that the disciplinary hearings were unfairly conducted in that the inmate's advocate was not present at the hearing, that the inmate was found guilty on the basis of the testimony of confidential informants, and that the inmate was not permitted to call some witnesses. The plaintiff seems to sue the defendants in both their individual and official capacities. The plaintiff seems to seek injunctive relief such as his release to the general population at Northern Correctional Institution and the expunging of the aforementioned disciplinary convictions from his institutional record, and compensatory and punitive money damages.

The defendants, Captain Michael Cleaver, Deputy Commissioner Brian Murphy, Lieutenant Robert Meulemans, Correctional Treatment Officer Jason Marston, Correctional Counselor Marc Cooper, Correctional Officer Gregory Williams, Correctional Counselor Richard Werner, Correctional Counselor William Bourassa, Captain Steven Frey, Correctional Counselor Robert Clark, and Correctional Officer Neil Cormier respectfully submit this memorandum of law in support of their motion to dismiss the plaintiff's complaint on the following grounds:

I. The court lacks subject matter jurisdiction pursuant to the Eleventh Amendment.

II. The court lacks subject matter jurisdiction, because this action is barred by the doctrine of sovereign immunity.

III. The court lacks subject matter jurisdiction, because this action is barred by the statutory immunity provided by § 4-165.

IV. This action is barred by the doctrine of qualified immunity.

V. The plaintiff has failed to state a claim upon which relief can be granted, since the plaintiff has no constitutionally protected right to a specific classification.

The plaintiff's complaint is brought pursuant to 42 U.S.C § 1983, against eleven State of Connecticut Department of Correction defendants, apparently in both their individual and official capacities. The plaintiff's *pro se* complaint purports to seek injunctive relief as well as money damages from the defendants.

## ARGUMENT

### I.    STANDARD OF REVIEW

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).  The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Younger v. Chernovetz*, 792 F.Supp. 173, 174 (D.Conn. 1992) (quoting *Ryder Energy Distribution v. Merrill Lynch commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).  Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  *See Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

Understandably, the Court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction.  *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).  *But see, Davidson v. Flynn,* 32 F.3d 27 (2d Cir. 1994) (experienced *pro se* litigant familiar with the requirements of the legal system may be held to a higher standard).  This well-established canon does not, however, relieve a *pro se* litigant of his obligation to set forth a "short and plain" statement of his claims.  *See* Federal Rules of Civil Procedure 8(a)(2); *Salahuddin v. Cuomo*, 861

F.2d 40 (2d Cir. 1988).  Even *pro se* litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief.  *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986).

In the Second Circuit, it is well-established that mere "conclusory allegation[s] without evidentiary support or allegations of particularized incidents, [do] not state a valid claim." *Brown v. City of Oneonta,* 235 F.3d 769, 773 (2d Cir. 2000).   *Hall v. Dworkin,* 824 F. Supp. 1403, 1412 (N.D.N.Y. 1993) (complaints relying on civil rights statutes are insufficient if they merely include a "litany of general conclusions"), *citing Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir. 1987).  *Cf. Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1972) ("a complaint consisting of nothing more than naked assertions fails to state a claim").  Where the plaintiff's complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," it may safely be dismissed.  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  *See also, Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991) (complaints based on violation of constitutional right must contain more than conclusory allegation to avoid dismissal); *Flaherty v. Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) (certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that . . . detailed fact pleading is required to withstand a motion to dismiss); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed).  Thus, in practice, "a complaint must contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under *some* viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted). A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

In applying supplemental jurisdiction over pendent state law claims, federal courts must apply state substantive law. *See, e.g., Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir. 1991), *cert. denied,* 502 U.S. 1060, 117 L. Ed. 2d 110, 112 S. Ct. 939 (1992). Thus, "a state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim." *Moodie v. Federal Reserve Bank,* 58 F.3d 879, 884 (2d Cir. 1995).

## II.    THE DEFENDANTS ARE IMMUNE FROM LIABILITY FOR MONETARY DAMAGES ADJUDGES AGAINST THEM IN THEIR OFFICIAL CAPACITIES UNDER THE ELEVENTH AMENDMENT

To the extent that the plaintiff seeks monetary damages and/or retrospective injunctive relief from the defendants in their official capacities, the federal district courts lack subject matter jurisdiction over such claims pursuant to the U.S. Constitution and the Eleventh Amendment.

As explained by the U.S. Supreme Court in the case of *Alden v. Maine,* 527 U.S. 706, 712-13, 144 L.Ed.2d 636, 119 S.Ct. 2240 (1999),

> The  Eleventh  Amendment makes explicit reference to the States' immunity from suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const., Amdt. 11.  We have,

> as a result, sometimes referred to the States' immunity from suit as
> "Eleventh Amendment immunity." The phrase is convenient
> shorthand but something of a misnomer, for the sovereign
> immunity of the States neither derives from nor is limited by the
> terms of the Eleventh Amendment. Rather, as the Constitution's
> structure, and its history, and the authoritative interpretations by
> this Court make clear, the States' immunity from suit is a
> fundamental aspect of the sovereignty which the States enjoyed
> before the ratification of the Constitution, and which they retain
> today ....

*Id.*

Thus, in order to clarify and preserve the limitations upon the abrogation of the states'

sovereign immunity included by the Framers in the Constitution itself, Congress approved, and

the states' ratified, the Eleventh Amendment under which "[t]he Judicial power of the United

States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State." Although the Amendment, by its terms, "would appear to restrict only the

Article III diversity jurisdiction of the federal courts," *Seminole Tribe of Florida v. Florida,* 517

U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court has consistently

interpreted the Amendment more broadly. *See generally, Blatchford v. Native Village of Noatak,*

501 U.S. 775, 779, 111 S.Ct 2578, 2581, 115 L.Ed.2d 686 (1991). Accordingly, the

constitutional bar erected by the Eleventh Amendment applies to suits brought by citizens

against any state, *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890), its

departments or agencies, *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114

(1979); and its officials when "the state is the real substantive party in interest," *Ford v.

Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

For state officials, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963). A decree operates against the state if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted).

As a general rule, suits brought against state officials in their official capacities are suits brought against the state. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). "[A] suit against state officials that is in fact against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst v. Halderman*, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984), *citing Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982). *See also, Smith v. Reeves,* 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900) (a state official is immune from suit in federal court for actions taken in an official capacity).

An exception to the general rule of *Hans* has been recognized where an official capacity suit challenges the legality of an official's conduct under the Constitution or federal law. *Ex Parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908). The theory in such cases is that a state cannot authorize actions by state officials that are contrary to "the supreme authority of the United States." *Id.* However, a federal court may only award

injunctive relief that governs the official's future conduct.  *Green v. Mansour*, 474 U.S. 64, 74, 106 S.Ct. 423, 429, 88 L.Ed.2d 371 (1985).  Thus, unless a state has explicitly consented to a suit in federal court, official capacity suits for monetary or other retrospective relief remain outside federal jurisdiction.  *Id.*, 474 U.S. at 74, 106 S.Ct. at 429; *Edelman v. Jordan*, 415 U.S. 651, 667-68, 94 S.Ct. 1347, 1357-58, 39 L.Ed.2d 662 (1974); *see also, Cruz v. Gomez,* 202 F.3d 593, 595 n.2 (2d Cir. 2000) (money damages only available against a state defendant in his individual capacity).

In order to state a claim for prospective injunctive relief, a plaintiff must, as a threshold matter, demonstrate, *inter alia,* that "a federal court decision is likely to redress the injury." *Deshawn E. v. Safir,* 156 F.3d 340, 344 (2d Cir. 1998), *citing Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656 (1993) (holding that in order to establish standing, the prospect of obtaining relief from the injury as a result of a favorable ruling must not be too speculative) (internal quotations and citations omitted).  A plaintiff seeking injunctive or declaratory relief cannot simply rely on past injury to satisfy the requirement but must show a likelihood that he or she will be injured in the future. *Deshawn, supra,* 156 F.3d at 344, *citing City of Los Angeles v. Lyons,* 461 U.S. 95, 105-106 (1983).  A failure on the part of the plaintiff to allege specific facts evidencing a likelihood that he will continue to suffer future injury at the hands of the defendant absent a grant of injunctive relief is fatal to his demand for such relief against the defendant in his official capacity.

Here, the plaintiff seems to sue the defendants in both their official and individual capacities.  To the extent that the plaintiff proceeds against the defendants in their official

capacities, this lawsuit violates the Eleventh Amendment.  The District Court therefore lacks

subject matter jurisdiction over such a lawsuit.  Accordingly, this lawsuit should be dismissed.

### III.     THE DEFENDANTS ARE ENTITLED TO BOTH SOVEREIGN AND STATUTORY IMMUNITY FROM LIABILITY FOR ANY STATE CONSTITUTIONAL AND COMMON LAW CLAIMS.

To the extent that the plaintiff's complaint can be read liberally to assert any pendent

claims against the state defendants, in violation of either the Connecticut Constitution or

common law, the state defendants are entitled to dismissal of these claims under the common law

doctrine of sovereign immunity and the statutory immunity provided by Connecticut General

Statutes § 4-165.[1]

### A.  Sovereign Immunity.

In the instant lawsuit, the plaintiff appears to direct his allegations of wrongdoing at the

defendants in both their individual and official capacities.  *See* Complaint, ¶¶ 1-2 and 8-9.  Any

representation that the plaintiff is suing the defendants in their individual capacities is self-

serving, and is not dispositive of the matter under state law.  In *Miller v. Egan,* 265 Conn. 301,

828 A.2d 549 (2003)*,* the Connecticut Supreme Court recently examined the question of whether

a pleading could reasonably be construed to sue a series of state defendants in their official

---

[1]  General Statutes § 4-165 provides, in relevant part, as follows:

> **Immunity of state officers and employees from personal liability.** No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment.

capacities despite a claim on the part of the plaintiff that the suit was meant only to sue the defendants in their individual capacities.  Recognizing that, under state jurisprudence, the construction of a pleading was a question of law, over which it exercised plenary review, the Supreme Court applied the test set forth in *Spring v. Constantino,* 168 Conn. 563, 568, 362 A.2d 871 (1975), to determine in what capacity the defendants had been sued.  The Court concluded that, based upon the nature of the allegations in the complaint, the plaintiff had sued the defendants in their official capacities, and that, as such, they were entitled to sovereign immunity from suit.

In examining the allegations of the complaint, the Court first observed that "the fact that the state is not named as a defendant does not conclusively establish that the action is not within the principle which prohibits actions against the sovereign without its consent …." *Miller*, 265 Conn. at 308, *citing Spring v. Constantino, supra,* at 568.  Rather, the Court observed, "the vital test is to be found in the essential nature and effect of the proceeding." *Id.*  It then set forth four criteria to determine whether an action is "in effect, one against the state [which] cannot be maintained without its consent:  (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." *Id.*

The *Miller* court then went on to reiterate long-standing common law principles surrounding the application of the doctrine of sovereign immunity:

We have long recognized the validity of the common-law principle that the state cannot be sued without its consent …. *Horton v. Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977).  We have also recognized that *because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. Fetterman v. University of Connecticut,* 192 Conn. 539, 550-51, 473 A.2d 1176 (1984) ….

We have held that a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity; M*artinez v. Department of Public Safety,* 263 Conn. 74, 85-86, ___ A.2d ___ (2003)]; or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute. *Horton v. Meskill, supra,* 172 Conn. 624 ….

Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property.  *Pamela B. v. Ment,* 244 Conn. 296, 328, 709 A.2d 1089 (1998).  Because a court may tailor declaratory and injunctive relief so as to minimize any such interference, and in order to afford an opportunity for voluntary compliance with the judgment, actions that seek injunctive or declaratory relief against a state officer acting in excess of statutory authority or pursuant to an unconstitutional statute do not conflict with the policies underlying the doctrine of sovereign immunity.  *Doe v. Heintz,* 204 Conn. 17, 32, 526 A.2d 1318 (1987) ….

This exception does not apply, however, to claims against the state for monetary damages.  *See Krozser v. New Haven,* 212 Conn. 415, 423, 562 A.2d 1080 (1989) (plaintiff seeking money damages against state, alleging that defendant's actions violated his constitutional rights, required to seek waiver of immunity from claims commissioner before bringing action in court), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990); *Barde v.*

> *Board of Trustees,* 207 Conn. 59, 60-61, 539 A.2d 1000 (1988) (treating plaintiff's claims for injunctive relief and money damages separately; as to money damages, plaintiff required to exhaust administrative remedies by proceeding through claims commissioner; as to injunctive relief, plaintiff's claims of constitutional violations not sufficiently established); *Doe v. Heintz, supra,* 204 Conn. 36-37 (sovereign immunity barred plaintiff's claims for attorney's fees and costs, despite plaintiff's allegations that state officer was acting pursuant to an unconstitutional statute); *Fetterman v. University of Connecticut, supra,* 192 Conn. 553, (treating claims for monetary damages and declaratory relief separately and concluding that counts "requesting relief by way of damages" were barred by doctrine of sovereign immunity).

*Miller, supra,* 265 Conn. at 313-16. (internal quotations omitted) (emphasis supplied).

Here, it is clear from the complaint that the State of Connecticut Department of Correction defendants are being sued over matters involving the performance of their official duties on behalf of the State of Connecticut. In addition, because "a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state," *Miller, supra,* the third prong of the *Miller* test is satisfied. Finally, if a judgment is entered against the State of Connecticut Department of Correction defendants, Connecticut General Statute § 5-141d requires that the State of Connecticut indemnify its officers and employees for any monetary damages adjudged.[2] Having met each of the prongs of the applicable test, any

---

[2]   Connecticut General Statutes § 5-141d provides, in pertinent part, as follows:

> (a) The state shall save harmless and indemnify any state officer or employee, as defined in section 4-141, and any member of the Public Defender Services Commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

supplementary state law claims must be found to have been filed against the State of Connecticut Department of Correction defendants in their official capacities (that is, against the "state"), regardless of the plaintiff's representations to the contrary.

Connecticut law recognizes only two situations in which it is unnecessary for a plaintiff to first seek and obtain permission to sue the state from the claims commissioner before filing suit in court. A plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity; or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute. *Miller, supra,* at 316-17. The burden is on the plaintiff to "show" that his complaint fits within one or both of the enumerated exceptions. *Id.,* at 314. Here, however, the Connecticut legislature has not waived, either explicitly or by force of necessary implication, the state's sovereign immunity. Moreover, the plaintiff does not claim that the defendants acted in excess of their statutory authority or pursuant to an unconstitutional statute. As such, any such claims against the State of Connecticut Department of Correction defendants are properly construed under Connecticut law as having been filed against them in their official capacities -- that is, against the state -- and are barred by the doctrine of sovereign immunity.

**B. <u>Statutory Immunity</u>.**

Having determined that any pendent state law claims against the defendants are barred by the doctrine of sovereign immunity, it is unnecessary to examine whether the claims brought against them are likewise barred by the statutory immunity created by Connecticut General Statutes § 4-165.  *See Shay v. Rossi,* 253 Conn. 134, 180-81, 749 A.2d 1147 (2000), *overruled in part on other grounds, Miller v. Egan, supra,* 265 Conn. at 325.  However, even assuming *arguendo* that any state law claims were not barred by the doctrine of sovereign immunity, they would nonetheless be barred under § 4-165.

The outcome of the statutory immunity argument is controlled by the decision of the Connecticut Supreme Court in the case of *Martin v. Brady,* 261 Conn. 372, 802 A.2d 814 (2002). In *Martin,* the plaintiff alleged that defendant state police officers conducted an improper search of his home and seizure of his person in violation of his rights under Article 1, §§ 7 and 9 of the Connecticut Constitution.[3]  The sole issue on appeal was whether the defendant State Police officers were entitled to immunity from suit by virtue of statutory, personal immunity under Connecticut General Statutes § 4-165 and, therefore, were not liable to the plaintiff for their alleged acts of misconduct.  *Id.,* 261 Conn. At 373.

In the posture of that case, the Court deemed it necessary, in order to resolve the claim of statutory immunity, to examine the pleadings to decide whether the plaintiff had alleged

---

[3]  The plaintiff in *Martin* also argued that suit was authorized against the defendant state police officers arguing that the Connecticut Supreme Court in *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998), had recognized a cause of action under article first, § 7 of the Constitution of Connecticut.  *See Martin*, *supra*, 64 Conn. App. 433, 780 A.2d 961 (2001), overruled on other grounds, 261 Conn. 372, 802 A.2d 814 (2002).  The *Martin* court rejected that

sufficient facts with respect to personal immunity under § 4-165 to support a conclusion that the defendants were acting outside the scope of their employment or wantonly, recklessly or maliciously.  In *Martin*, the complaint alleged three separate instances of misconduct on the part of the State Police defendants.  The plaintiff alleged:  (1) that the defendants forcibly entered his home without a search warrant, striking him and pushing him to the floor after he submitted to arrest; (2) that the defendants searched his home pursuant to a search warrant obtained pursuant to a false affidavit; and (3) during the search, smashed windows and broke down doors.  *Id.,* at 377.

The Court reasoned that, in order to determine if a state actor's conduct is caused in the discharge of his or her duties or within the granted state authority, it is necessary to examine the nature of the alleged conduct and its relationship to the duties incidental to the employment.  *Id.,* at 378.  The Court referred to its previous decisions in the cases of *Antinerella v. Rioux,* 229 Conn. 479, 499, 642 A.2d 699 (1994), *overruled in part on other grounds, Miller v. Egan, supra,* 265 Conn. at 325, where it found the defendant's conduct to fall outside the umbrella of immunity because "[t]he defendant's alleged conduct [in soliciting and accepting illegal kickbacks from his deputy sheriffs] was not designed to advance any interest of his employer, the state, and did not serve any legitimate state interest … [being] motivated by purely personal considerations entirely extraneous to his employer's interests," and in *Shay v. Rossi, supra,* at 174, where it determined that "the defendants, individuals employed by the state department of children and families, had acted beyond the scope of their employment when acting 'solely … to

argument, holding that *Binette* applied only to municipal defendants and did not waive sovereign immunity for state

justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted …,'" in determining that the allegations of improper search and seizure on the part of State Police officers, with which it was presently confronted, unlike the allegations in *Antinerella* and *Shay*, were *not* arguably outside the scope of employment of the police defendants.  *Martin, supra,* at 378-79.

The Martin court next considered whether the plaintiff had sufficiently alleged facts so as to cause the defendants' conduct to fall within the statutory exception for "wanton, reckless or malicious" conduct. Concluding that the plaintiff had failed to carry his burden in this regard, the Court reasoned as follows:

> we have never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165.  In the common-law context, however, we have stated:  In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . In order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  Indeed, in some instances, the mere fact that an official has acted in excess of his or her authority may suffice to prove that the conduct was wanton, reckless or malicious.

---

officials.

*Id.,* at 379 (Internal quotation marks omitted.).  Observing that the facts alleged in the complaint were not inconsistent with an exercise of the statutory authority provided to the State Police pursuant to Connecticut General Statutes § 53a-22, the *Martin* Court concluded that there was no allegation in the complaint from which it could infer that the defendants' conduct was indicative of such a state of mind or that the conduct rose to such a level of egregiousness necessary to be considered wanton, reckless or malicious.  *Id.,* at 380.

The foregoing analysis of statutory immunity conducted by the *Martin* court in that case is similarly dispositive of the allegations of the complaint herein.  The allegations contained in the *Martin* complaint and those in the instant lawsuit are similar in that the allegations set forth in the *Martin* complaint and the allegations set forth in the instant lawsuit both allege "wrongful" actions which fall within the statutory duties of the defendants.  The plaintiff's claims of unfairly issued disciplinary reports and unfairly conducted disciplinary hearings are insufficient to defeat statutory immunity pursuant to § 4-165.  Indeed, the issuance of disciplinary reports and the conducting of disciplinary hearings falls squarely within the statutory duties of our Department of Correction officers.  Moreover, the complaint is devoid of the sorts of allegations which would arguably carry a State of Connecticut Department of Correction defendant's alleged conduct outside the scope of his official duties into an area which could reasonably be construed as wanton, reckless or malicious as the meaning of those terms have been interpreted by the Connecticut courts when examining the extent of immunity under § 4-165.  Indeed, if the instant claims were to be held as beyond the scope of a correctional officer's authority sufficient to overcome the bar of statutory immunity, the doctrine would be diminished to meaningless

verbiage.  Such was clearly not the intent of the legislature when it enacted on behalf of state

officers and employees sued in their individual capacities the statutory protection from suit

contained in § 4-165.

The state defendants are entitled to the cloak of sovereign and statutory immunity on any

pendent state law claims.  Accordingly, the plaintiff is required to file any state law claims before

the Claims Commissioner in order to seek and, if possible, obtain a waiver of sovereign and/or

statutory immunity.[4]

## IV.     THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THEIR ACTIONS AS ALLEGED IN THE PLAINTIFF'S COMPLAINT.

The shield of qualified immunity generally protects government officials from liability

for damages on account of their performance of discretionary official functions "insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct.

2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998).  The

availability of the defense turns upon the "objective legal reasonableness" of the allegedly

unlawful official action, "assessed in light of the legal rules that were clearly established at the

time it was taken."  *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d

523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. at 818-19, 102 S.Ct. at 2739).  *See also,*

*Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir. 1993).  The qualified immunity defense is intended to

---

[4]   Indeed, even assuming that the plaintiff obtains a waiver of the State's sovereign or statutory immunity through the process established under Chapter 53 of the Connecticut General Statutes, the waiver of immunity is limited to a trial to the court held in the Superior Courts of the State of Connecticut.  *See* Conn. Gen. Stat. § 4-160.

"strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997) (citations omitted).  The rule serves to protect government officials from charges that they knowingly violated standards that were in fact unknowable." *Havekost v. U.S. Dept. of Navy,* 925 F.2d 316 (9th Cir. 1991) (citations omitted).

Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 252 (2001), *citing Mitchell v. Forsyth,* 472 U.S. 511, 526, 86 L.Ed. 2d 411, 105 S. Ct. 2806 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* 533 U.S. at 201.  As a result, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.  *Id., citing Hunter v. Bryant,* 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991) (*per curiam*).

In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.  According to *Saucier*, a court required to rule upon the qualified immunity issue must first consider this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged

show the officer's conduct violated a constitutional right?  *Id., citing Siegert v. Gilley,* 500 U.S.

226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991).  As explained by the Court in *Saucier,*

> In the course of determining whether a constitutional right was
> violated on the premises alleged, a court might find it necessary to
> set forth principles which will become the basis for a holding that a
> right is clearly established. This is the process for the law's
> elaboration from case to case, and it is one reason for our insisting
> upon turning to the existence or nonexistence of a constitutional
> right as the first inquiry.   The law might be deprived of this
> explanation were a court simply to skip ahead to the question
> whether the law clearly established that the officer's conduct was
> unlawful in the circumstances of the case.

*Id.,* 533 U.S. at 201.

If no constitutional right would have been violated were the allegations established,

*Saucier* instructs that there is no necessity for further inquiries concerning qualified immunity.

On the other hand, if a violation could be made out on a favorable view of the parties'

submissions, the next, sequential step is to ask whether the right was clearly established.  *Id.,* 501

U.S. at 201.  This inquiry, it is vital to note, must be undertaken in light of the specific context of

the case, not as a broad general proposition; and it too serves to advance understanding of the

law and to allow officers to avoid the burden of trial if qualified immunity is applicable.  As

more fully articulated by the U.S. Supreme Court in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct.

2508, 153 L.Ed.2d 666 (2002),

> Qualified immunity operates to ensure that before they are
> subjected to suit, officers are on notice that their conduct is
> unlawful.  For a constitutional right to be clearly established, its
> contours must be sufficiently clear that a reasonable official would
> understand that what he is doing violates that right.  This is not to
> say that an official action is protected by qualified immunity unless

> the very action in question has been held unlawful, but it is to say
> that in the light of pre-existing law the unlawfulness must be
> apparent.

*Id.,* 536 U.S. at 739, (internal citations and quotations omitted).  The relevant, dispositive inquiry

in determining whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted.  *Saucier v. Katz, supra.*   If

the law did not put the officer on notice that his conduct would be clearly unlawful, judgment

based on qualified immunity is appropriate.  *Id.*

Of course, there is no definitive guide as to when a right is clearly established.  Thus,

while the defendants do not question the existence of a inmate's Fourteenth Amendment right to

due process generally,

> the relevant inquiry is not whether the defendants should have
> known that there was a federal right, in the abstract ..., but whether
> the defendants should have known that the specific actions
> complained of violated  ... [that right].  Such an inquiry requires
> that a court define the constitutional right with some specificity.  If
> the right is defined too broadly, plaintiff would be able to convert
> the rule of qualified immunity ... into a rule of virtually unqualified
> liability simply by alleging violation of extremely abstract rights.

*Lewis v. Cowen,* 165 F.3d 154, 167 (2d Cir. 1999) (internal quotations and citations omitted).  In

the absence of controlling precedent, decisions from other circuits must both point unmistakably

to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by

applicable direct authority as to leave no doubt in the mind of a reasonable officer that his

conduct, if challenged on constitutional grounds, would be found wanting. *Marsh v. Arn,* 937

F.2d 1056, 1068 (6th Cir. 1991) (citations omitted).[5]

Assuming that the factual allegations in a particular case demonstrate that there exists an

underlying constitutional right, and that this right was clearly established in a particularized

sense at the time the defendants acted, the final inquiry which must be undertaken in the

qualified immunity analysis is the question of whether, despite the nature of the constitutional

right at issue, a reasonable officer could have been mistaken as to the legal constraints upon his

conduct.  If such a mistake as to the legal constraints upon his conduct was objectively

reasonable, the defendant is nonetheless entitled to qualified immunity.

> The concern of the immunity inquiry is to acknowledge that
> reasonable mistakes can be made as to the legal constraints on
> particular [governmental] conduct.  It is sometimes difficult for an
> [official] to determine how the relevant legal doctrine [...] will
> apply to the factual situation the [official] confronts.   If the
> [official's] mistake as to what the law requires is reasonable,
> however, the [official] is entitled to the immunity defense.

*Saucier v. Katz, supra.  See also, Malley v. Briggs,* 475 U.S. 335, 343, 89 L.Ed.2d 271, 106 S.Ct.

1092 (1986) (qualified immunity leaves ample room for mistaken judgments).  Thus, qualified

immunity protects "all but the plainly incompetent or those who knowingly violate the law, or

those who act where "the law clearly proscribed the actions" taken."  *Saucier, supra,* (quoting

*Anderson v. Creighton,*  483 U.S. at 638-39).  This aspect of the doctrine of qualified immunity

---

[5]   As stated by the Second Circuit in *Poe v. Leonard,* 282 F.3d 123 (2nd Cir. 2002), "[i]t is unclear the extent to
which we may rely on the case law of other circuits to determine whether the law was clearly established."  *Id.,* 282
F.3d at 141, n. 15.  Accordingly, in those cases where the Second Circuit has relied upon the law established in other
circuits as a guide for its own legal analysis, it has done so only where our precedent had foreshadowed the

recognizes that law enforcement officers are only human, and inevitably, accidents and mistakes

of judgment will happen.  Such mistakes alone do not open officers to personal liability.  *Wren v.*

*Towe,* 130 F.3d 1154, 1159 (5th Cir. 1997), *cert. denied,* 525 U.S. 815, 142 L. Ed. 2d 40, 119 S.

Ct. 51 (1998); *accord, Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992) ( indicating that

qualified immunity affords tolerance for mistakes of judgment traceable to unsettled law, faulty

information, or contextual exigencies).  Accordingly,

> In cases involving the conduct of police officials, … even where
> the plaintiff's federal rights and the scope of the official's
> permissible conduct are clearly established, the qualified immunity
> defense protects a government actor if it was "objectively
> reasonable" for him to believe that his actions were lawful at the
> time of the challenged act . . . .  The objective reasonableness test
> is met - and the defendant is entitled to qualified immunity - if
> officers of reasonable competence could disagree on the legality of
> the defendant's actions . . . .  In qualified immunity cases, we are
> not concerned with the correctness of the defendants' conduct, but
> rather with the "objective reasonableness" of their chosen course of
> action given the circumstances confronting them at the scene . . . .
> [W]hen the factual record is not in serious dispute . . . [t]he
> ultimate legal determination whether . . . a reasonable police
> officer should have known he acted unlawfully is a question of law
> better left for the court to decide.

*Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995) (quotations and internal citations omitted);

*accord, Oliviera v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115

S.Ct. 721, 130 L.Ed.2d 627 (1995) (immunity ordinarily should be decided by the court in those

cases where the facts concerning the availability of the defense are undisputed).

---

development of the relevant standards that other circuits had clearly established.  *Id., citing Varrone v. Bilotti*, 123
F.3d 75 (2d Cir. 1997).

Regarding the plaintiff's apparent contentions that he was denied his Fourteenth Amendment Due Process Rights at his disciplinary hearing, because he was found guilty of the disciplinary report based, in part, on the testimony of confidential informants, and he was not permitted to call some witnesses, the law appears to be clearly established. Prison officials must have the necessary discretion to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile documentary evidence. Because the operation of a prison is an extraordinarily difficult undertaking, prison administrators should be free to exercise their discretion without being subject to unduly crippling constitutional requirements. *See Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986). *See also Walker v. McClellan*, 126 F.3d 127 (2d Cir. 1997), for the proposition that an inmate's right to call witnesses in a disciplinary hearing was qualified by the limitation that exercise of the right would not be permitted to impinge on correctional goals and a hearing officer is permitted to exclude irrelevant or unnecessary testimony.

Thus, analysis of the plaintiff's apparent allegations coupled with the an analysis of the relevant law establishes that the defendants are entitled to qualified immunity for their actions.

## V.     THE PLAINTIFF HAS NO CONSTITUTIONALLY PROTECTED RIGHT TO A SPECIFIC CLASSIFICATION

The plaintiff appears to allege that he was improperly classified with the designation of security risk group affiliation. If this is, in fact, the plaintiff's contention, the defendants maintain that they are entitled to judgment on this claim, because inmates have no constitutionally protected right to avoid any classification.

Inmates do not have a constitutionally protected right to a particular classification. The Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal officials full discretion to determine prisoner classifications. *See Moody v. Daggett*, 429 U.S. 78, 99 n. 9 (1976). Similarly, where state prison officials are given complete discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected rights to a particular classification. *See Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (no due process issue in class status of prisoner where prisoner failed to point out any state statute, regulation or policy statement that limited prison officials' discretion in classifying prisoner).

As this district has previously found, the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action. *See Green v. Armstrong*, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D. Conn. Feb. 25, 1998), *aff'd*, No. 98-37007 (Aug. 20, 1999) (summary order). In *Green*, the district court noted that the state courts have found no state-created liberty interest in proper classification. *Id.* at 10 (citing S*antiago v. Commissioner of Correction*, 39 Conn. App. 674, 680, 667 A.2d 304, 307 (1995), for the proposition that improper classification does not deprive inmates of any legally recognized liberty interest). *See also Wheway v. Warden*, 215 Conn. 418, 430-32 (1990) (holding that Commissioner of Correction retains discretion to classify prisoners to any security level and prison classification programs do not create any liberty interest or any constitutional entitlement to due process); *Miller v. Warden*, No. CV 000598372, 2000 WL 1258429, at 1 (Conn. Super.

Ct. July 21, 2000) ("The Connecticut case of *Weheway v. Warden* [sic], 215 Conn. 418, 430-31 (1990), established in Connecticut that an inmate has no liberty interest in a particular security classification.").

Thus, the plaintiff has no constitutionally protected interest, federally created right or state created liberty interest in his classification. *See Pugliese v. Nelson*, 617 F.2d 916, 923-24 & nn. 5, 6 (2d Cir. 1980) (no due process liberty interest in avoiding prisoner classification that delayed or precluded participation in institutional programs). Accordingly, the plaintiff's apparent claim that his constitutional rights were violated when he was classified with the designation of security risk group affiliation should be dismissed.

## CONCLUSION

Wherefore, all the foregoing reasons, the defendants respectfully seek dismissal of this matter.

DEFENDANTS,
Captain Michael Cleaver, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____
Kathleen A. Keating
Assistant Attorney General
Federal Bar No. ct25247
110 Sherman Street
Hartford, CT  06105
Telephone:  (860) 808-5450
E-mail:  kathleen.keating@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid,

this 24th day of February, 2004, to:

Cyrus Griffin, Inmate No. 262493
Northern Correctional Institution
287 Bilton Road, P.O. Box 665
Somers, CT  06071

_____
Kathleen A. Keating
Assistant Attorney General