UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2004 AUG 18  A 10: 46

U.S. DISTRICT COURT
HARTFORD, CT.

CYRUS GRIFFIN                  :
                               :         PRISONER
     v.                        :    Case No. 3:03CV1029(DJS)(TPS)
                               :
CLEAVER, et al.[1]             :


RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Cyrus Griffin ("Griffin") is currently confined at the Northern Correctional Institution in Somers, Connecticut. He brings this civil rights action pro se pursuant to 28 U.S.C. § 1915. Griffin alleges that he was not afforded due process at two disciplinary hearings. Defendants have filed a motion to dismiss. For the reasons that follow, defendants' motion is denied.

I.   Standard of Review

When considering a Rule 12(b) motion to dismiss, the court

---

[1] The named defendants in the amended complaint are Captain Michael Cleaver; Lieutenant Robert Meulemans; Correctional Treatment Officer James Marston, incorrectly identified as Mastos; Correctional Counselor Marc Cooper; Correctional Officer Gregory Williams; Correctional Counselor Robert Werner; Correctional Counselor William Bourassa; Captain Steven Frey; Correctional Counselor Robert Clark; Correctional Officer Neil Cormier; and Deputy Commissioner Brian Murphy. Defendant Murphy is named in his individual and official capacities. All other defendants are named in their individual capacities only.

accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted)). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). The Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

   B.   Facts

The court accepts as true the following allegations taken

from the amended complaint.

On May 2, 2002, while confined at the MacDougall-Walker Correctional Institution, Griffin was playing cards with another inmate when a fight broke out on the tier above them. Griffin tried to get the attention of the correctional officer on duty to have his cell door opened so he could enter his cell. When he failed to get the guard's attention, he just stood outside his cell door.

The inmate with whom Griffin had been playing cards began to fight with another inmate. Griffin tried to stop the fight. Griffin and another inmate were able to separate the two. When correctional officers, including defendant Williams, responded to the tier, all four inmates were handcuffed and taken to the restrictive housing unit along with a fifth inmate who had been standing in the general vicinity of the fight. After correctional staff reviewed a videotape of the incident, the fifth inmate was released and returned to his cell. Griffin received a disciplinary report for fighting. Defendant Cleaver said that he would review the videotape to determine whether Griffin was fighting or trying to stop the fight. He also said, however, that he did not believe Griffin's account of the incident, that he was pursuing all members of the security risk group Elm City Boys and that he was going to send all members of

the Elm City Boys to Northern Correctional Institution.

Defendant Cooper was assigned to investigate Griffin's disciplinary charge for fighting. He spoke with Griffin on May 5, 2002, and told him that the fight on the top tier was not gang-related. On May 9, 2002, Griffin appeared at a disciplinary hearing before defendant Meulemans and was found guilty of fighting. The disciplinary finding was based on information provided by defendant Marston.

The following day, he received a second disciplinary report for Security Risk Group affiliation based upon the reports of confidential informants that Griffin was an active member of the Elm City Boys and that the fight on the lower tier was the result of disrespect shown toward members of the Elm City Boys. Defendants Clark and Cormier were assigned to investigate the charge. Defendant Clark interviewed Griffin. During the interview, Griffin asked defendant Clark to interview the other inmates to establish that the May 2, 2002 fight was not gang-related.

On May 15, 2002, Griffin received a duplicate of the May 10, 2002 disciplinary report with the charge changed from Security Risk Group affiliation to Security Risk Group Safety Threat. Defendant Frey signed the substitute disciplinary report. The hearing on this disciplinary report was held on May 16, 2002,

4

again before defendant Meulemans. Defendants Clark and Cormier were present at the hearing but Griffin's advocate, defendant Bourassa, was not present. When Griffin tried to explain that he was not involved in the May 2, 2002 fight and attempted to call the other three inmates as witnesses, he was told that the purpose of the hearing was not related to the fight but rather to defend himself against the reports of the confidential informants. Defendant Werner, the substitute advocate, had not interviewed any of the witnesses and offered no assistance. Griffin was found guilty and transferred to Northern Correctional Institution. Griffin appealed both findings to defendant Murphy. Both appeals were denied.

II. Discussion

Defendants raise four grounds in support of their motion to dismiss: (1) all claims for damages against the defendants in their official capacities are barred by the Eleventh Amendment; (2) defendants are protected by sovereign immunity from any state constitutional law or state common law claims; (3) defendants are protected by qualified immunity; and (4) Griffin has no protected right to a particular classification. In response, Griffin states that he does not seek damages from the defendants in their official capacities and that he is not challenging his classification. Rather he contends that he was denied due

5

process at the disciplinary hearings.

    A.    <u>Eleventh Amendment</u>

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. See <u>Florida Dep't of State v. Treasure Salvors</u>, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity. See <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979). The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985). A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101 n.11 (1984).

Griffin has named only defendant Murphy in his official capacity. Accordingly, defendants' motion is denied on this ground as to all other defendants. Although Griffin states in his opposition that he seeks only injunctive relief from defendant Murphy in his official capacity, that fact is not clear from the amended complaint. Because an award of damages against defendant Murphy in his official capacity is barred by the

6

Eleventh Amendment, the motion to dismiss is granted to the extent that the amended complaint may be construed as seeking damages from defendant Murphy in his official capacity.

B.   State Law Claims

Defendants next move to dismiss all state law claim on the ground that they are protected from suit by the state's sovereign immunity.  In response, Griffin states that he has alleged only violations of his rights under the Due Process Clause of the Fourteenth Amendment.  In light of this statement, defendants' motion to dismiss is denied without prejudice on this ground. Defendants may reassert their claim of immunity should Griffin attempt to assert state law claims in this case.

C.   Challenge to Classification

Defendants characterize Griffin's federal claim as a challenge to his classification as a Security Risk Group Safety Threat Member.  Griffin clearly states in his opposition that he challenges only the process afforded him at the two disciplinary hearings that resulted in the classification.  Defendants have not addressed Griffin's Fourteenth Amendment claims.

The court is required to liberally construe Griffin's allegations.  A liberal reading of the amended complaint would include the Fourteenth Amendment claims as well as a challenge to Griffin's classification as a Security Risk Group Safety Threat

7

Member.

The Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal prison officials full discretion to determine prisoner classifications. Moody v. Daggett, 429 U.S. 78, 99 n.9 (1976). Similarly, where state prison officials are given complete discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected right to a particular classification. See Madewell v. Roberts, 909 F.2d 1203, 1207 (8th Cir. 1990) (no due process issue in class status of prisoner where prisoner failed to point out any state statute, regulation or policy statement that limited prison officials' discretion in classifying prisoner).

As this district has previously found, the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action. See Green v. Armstrong, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D. Conn. Feb. 25, 1998), aff'd, No. 98-3707 (Aug. 20, 1999) (summary order). In Green, the district court noted that the state courts have found no state-created liberty interest in proper classification. Id. at 10 (citing Santiago v. Commissioner of Correction, 39 Conn. App. 674, 680, 667 A.2d 304,

8

307 (1995), for the proposition that improper classification does not deprive inmates of any legally recognized liberty interest). See Wheway v. Warden, 215 Conn. 418, 430-32 (1990) (holding that Commissioner of Correction retains discretion to classify prisoners to any security level and prison classification programs do not create any liberty interest or any constitutional entitlement to due process); Miller v. Warden, No. CV 000598372, 2000 WL 1258429, at *1 (Conn. Super. Ct. July 21, 2000) ("The Connecticut case of Wheway v. Warden, 215 Conn. 418, 430-31 (1990), established in Connecticut that an inmate has no liberty interest in a particular security classification.").

Thus, Connecticut inmates have no state or federally created liberty interest in their classification. See Allen v. Armstrong, No. 3:98cv668(PCD), slip. op. at 2 (D. Conn. Sept. 15, 2000) (holding that the due process clause affords prisoners no protection from erroneous classifications); Nieves v. Coggeshall, No. 3:96cv1799 DJS, 2000 WL 340749, at *5 (D. Conn. Jan. 31, 2000) (holding that inmate has no protected liberty interest in his classification); United States v. Harmon, 999 F. Supp. 467, 469-70 (W.D.N.Y. 1998) (holding that federal inmate has no liberty interest in any particular classification). See also Pugliese v. Nelson, 617 F.2d 916, 923-24 & nn.5, 6 (2d Cir. 1980) (no due process liberty interest in avoiding prisoner

9

classification that delayed or precluded participation in institutional programs).

Because Griffin has no protected interest in any particular classification, any possible claim challenging his classification must fail. Defendants' motion to dismiss is granted to the extent that the amended complaint may be construed to allege such a claim.

To state a claim for violation of procedural due process, Griffin first must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. See Tellier v. Fields, 230 F.3d 502, 511 (2d Cir. 2000) (citations omitted). In accordance with the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), the Second Circuit applies a two-part test to determine whether an inmate possesses a protected liberty interest. See id. An inmate has a protected liberty interest "only if the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation." Id. (citations and internal quotation marks omitted). Because defendants have not addressed this claim, the court makes no determination whether Griffin can prove any facts consistent with his allegations to satisfy the Sandin requirements.

D.  Qualified Immunity

Finally, defendants argue that they are protected by qualified immunity.

The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).

> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id.

At the time of the alleged violations of Griffin's rights, the law regarding claims for violation of due process had been established by Supreme Court precedent and interpreted by the

courts for approximately seven years. The court has determined above that it cannot conclude at this stage of litigation that Griffin would not be able to state a claim for denial of due process. Thus, the court cannot determine whether there has been a constitutional violation, the first step in evaluating a claim of qualified immunity.

Defendants' motion to dismiss is denied without prejudice on this ground. Defendants may revisit this issue in a motion for summary judgment or at trial.

IV. Conclusion

Defendants' Motion to Dismiss [doc. #19] is **GRANTED** in part and **DENIED** in part. The motion is granted as to any claim for damages against defendant Murphy in his official capacity and any possible claim challenging Griffin's classification as a Security Risk Group Safety Threat Member.

**SO ORDERED** this *17th* day of August, 2004, at Hartford, Connecticut.

/s/DJS
_____
Dominic J. Squatrito
United States District Judge