**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CYRUS GRIFFIN | : | PRISONER |
| *Plaintiff,* | : | 3:03CV1029(DJS)(TPS) |
| | : | |
| VS. | : | |
| | : | |
| CLEAVER, ET AL. | : | |
| *Defendants.* | : | DECEMBER 17, 2004 |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

The *pro se* inmate plaintiff sues the defendants, Captain Michael Cleaver, Lieutenant Robert Meulemans, Correctional Treatment Officer Jason Martson[1], Correctional Counselor Marc Cooper, Correctional Officer Gregory Williams, Correctional Counselor Richard Werner, Correctional Counselor William Bourassa, Captain Steven Frey, Correctional Counselor Robert Clark, Correctional Officer Neil Cormier, and Deputy Commissioner Brian Murphy, all employed by the State of Connecticut Department of Correction, pursuant to Title 42 USC § 1983, apparently alleging that the defendants violated the plaintiff's federal constitutional rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Specifically, the plaintiff appears to contest the issuance of two disciplinary reports, one relating to fighting on May 2, 2002 and the other relating to security risk group safety threat membership on May 15, 2002, the investigation of those disciplinary reports, the hearings of those disciplinary reports on May 9, 2002 for fighting and on May 16, 2002 for

---

[1]     In his amended complaint, the plaintiff incorrectly identifies Defendant Martson as Mastos.

security risk group safety threat membership, the two guilty findings regarding those disciplinary reports, the punishment relating to those guilty findings - the placement in the Restrictive Housing Unit as punitive segregation, and the designation of security risk group safety threat membership, apparently alleging, among other things, that the reports were unfairly issued in that the second report was issued on the basis of statements of confidential informants, and that the disciplinary hearings were unfairly conducted in that at the second hearing a specific inmate's advocate was not present and the plaintiff was not permitted to question some of his witnesses in a specific manner. It should be noted that it is not clear from the amended complaint exactly what the plaintiff's complaints are regarding the issuance of the first disciplinary report and the manner in which the first disciplinary hearing was conducted, except for the plaintiff's contention that he is innocent of the charge. Furthermore, it should be noted that in his amended complaint, the plaintiff does not set forth separate claims with supporting facts, but rather sets forth one narrative making it difficult to ascertain exactly what it is that the plaintiff is alleging. The plaintiff sues all of the defendants in their individual and their official capacities.[2]  The plaintiff appears to seek declaratory relief, such as a declaratory judgment stating that the defendants violated the plaintiff's constitutional rights. The plaintiff also appears to seek injunctive relief, such as release from close custody and placement in general population. The

---

[2]     Although in the caption of his amended complaint, the plaintiff indicates that he is suing only Defendant Murphy in his official capacity in addition to his individual capacity, in the parties section of his amended complaint, the plaintiff appears to indicate that he is suing all of the defendants in their official capacities in addition to their individual capacities. *See* Amended Complaint, Caption and Parties Sections.

plaintiff also appears to seek compensatory and punitive damages.  This motion seeks judgment

in favor of the Department of Correction Defendants for the following reasons:

I.      The court lacks subject matter jurisdiction pursuant to the Eleventh Amendment.

II.A.   The defendants are entitled to sovereign immunity.

II.B.   The defendants are entitled to statutory immunity.

III.    The defendants are entitled to qualified immunity.

IV.     The plaintiff has failed to exhaust his administrative remedies.

V.      The plaintiff has failed to state a claim for compensatory damages pursuant to the

Prison Litigation Reform Act under 42 U.S.C. § 1997e(e), since the plaintiff did not allege a

physical injury.

VI.     The plaintiff has failed to allege sufficient personal involvement on the part of the

Defendant Murphy.

VII.    The plaintiff has failed to state a claim upon which relief can be granted under the

Due Process Clause of the Fourteenth Amendment.

## ARGUMENT

## STANDARD OF REVIEW

A motion for judgment on the pleadings may be granted when the material facts are

undisputed and judgment on the merits is possible merely by considering the contents of the

pleadings as well as any additional facts which may properly be the subject of judicial notice.

*See, e.g., Sellers v. M.C. Floor Crafters, Inc.,*   842 F.2d 639 (2d Cir. 1988); *Cumis Insurance*

*Society, Inc. v. Windsor Bank & Trust Co.,*  736 F.Supp. 1226 (D.Conn. 1990).  In considering a

motion for judgment on the pleadings, the court must accept as true all of the well-pleaded facts alleged in the complaint, and draw all reasonable inferences in favor of the non-moving party. The court may not render judgment in favor of the defendant unless it is convinced that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bloor v. Carro, Spambock, Londim, Rodman & Fass,* 754 F.2d 57 (2d Cir. 1985); *Grease Monkey Int'l v. Watkins,* 808 F.Supp. 111 (D.Conn. 1992); *LoSacco v. Middletown,* 745 F.Supp. 812 (D.Conn. 1990). In this regard, the standards applied to a motion for judgment on the pleadings which identifies deficiencies in the pleadings are those that would have been appropriate to the disposition of a similar, pre-answer motion to dismiss. *U.S. v. Wood,* 925 F.2d 1580 (7th Cir. 1991); *Viacom International, Inc. v. Time, Inc.,* 785 F.Supp. 371 (S.D.N.Y. 1992).

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.CT. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Younger v. Chernovetz*, 792 F.Supp. 173, 174 (D.Conn. 1992) (quoting *Ryder Energy Distribution v. Merrill Lynch commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See*

*Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984);

*Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

Where the plaintiff's complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," it may safely be dismissed. *Salahuddin v. Cuomo*, 861 F.2d at 42. *See also, Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991) (complaints based on violation of constitutional right must contain more than conclusory allegation to avoid dismissal); *Flaherty v. Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) (certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that . . . detailed fact pleading is required to withstand a motion to dismiss); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed).  Thus, in practice, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted). A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

In applying supplemental jurisdiction over pendent state law claims, federal courts must apply state substantive law.  *See, e.g., Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir. 1991), *cert. denied,* 502 U.S. 1060, 117 L. Ed. 2d 110, 112 S. Ct. 939 (1992). Thus, "a state law depriving its courts of jurisdiction over a state law claim also operates to

divest a federal court of jurisdiction to decide the claim." *Moodie v. Federal Reserve Bank,* 58 F.3d 879, 884 (2d Cir. 1995).

**I.     THE DEFENDANTS ARE IMMUNE FROM LIABILITY FOR MONETARY DAMAGES ADJUDGED AGAINST THEM IN THEIR OFFICIAL CAPACITIES UNDER THE ELEVENTH AMENDMENT**

To the extent that the plaintiff seeks monetary damages and/or retrospective injunctive relief from the defendants in their official capacities, the federal district courts lack subject matter jurisdiction over such claims pursuant to the U.S. Constitution and the Eleventh Amendment.

As explained by the U.S. Supreme Court in the case of *Alden v. Maine,* 527 U.S. 706, 712-13, 144 L.Ed.2d 636, 119 S.Ct. 2240 (1999),

> The Eleventh Amendment makes explicit reference to the States' immunity from suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amdt. 11. We have, as a result, sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ....

*Id.*

Thus, in order to clarify and preserve the limitations upon the abrogation of the states' sovereign immunity included by the Framers in the Constitution itself, Congress approved, and the states' ratified, the Eleventh Amendment under which "[t]he Judicial power of the United

States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although the Amendment, by its terms, "would appear to restrict only the Article III diversity jurisdiction of the federal courts," *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court has consistently interpreted the Amendment more broadly.  *See generally, Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct 2578, 2581, 115 L.Ed.2d 686 (1991).  Accordingly, the constitutional bar erected by the Eleventh Amendment applies to suits brought by citizens against any state, *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890), its departments or agencies, *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1979); and its officials when "the state is the real substantive party in interest," *Ford v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

For state officials, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."  *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963).  A decree operates against the state if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."  *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted).

As a general rule, suits brought against state officials in their official capacities are suits brought against the state.  *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361-62, 116

L.Ed.2d 301 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). "[A] suit against state officials that is in fact against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst v. Halderman*, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984), *citing Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982). *See also, Smith v. Reeves*, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900) (a state official is immune from suit in federal court for actions taken in an official capacity).

An exception to the general rule of *Hans* has been recognized where an official capacity suit challenges the legality of an official's conduct under the Constitution or federal law. *Ex Parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908). The theory in such cases is that a state cannot authorize actions by state officials that are contrary to "the supreme authority of the United States." *Id.* However, a federal court may only award injunctive relief that governs the official's future conduct. *Green v. Mansour*, 474 U.S. 64, 74, 106 S.Ct. 423, 429, 88 L.Ed.2d 371 (1985). Thus, unless a state has explicitly consented to a suit in federal court, official capacity suits for monetary or other retrospective relief remain outside federal jurisdiction. *Id.*, 474 U.S. at 74, 106 S.Ct. at 429; *Edelman v. Jordan*, 415 U.S. 651, 667-68, 94 S.Ct. 1347, 1357-58, 39 L.Ed.2d 662 (1974); *see also, Cruz v. Gomez*, 202 F.3d 593, 595 n.2 (2d Cir. 2000) (money damages only available against a state defendant in his individual capacity).

In order to state a claim for prospective injunctive relief, a plaintiff must, as a threshold matter, demonstrate, *inter alia*, that "a federal court decision is likely to redress the injury."

*Deshawn E. v. Safir,* 156 F.3d 340, 344 (2d Cir. 1998), *citing Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656 (1993) (holding that in order to establish standing, the prospect of obtaining relief from the injury as a result of a favorable ruling must not be too speculative) (internal quotations and citations omitted).  A plaintiff seeking injunctive or declaratory relief cannot simply rely on past injury to satisfy the requirement but must show a likelihood that he or she will be injured in the future. *Deshawn, supra,* 156 F.3d at 344, *citing City of Los Angeles v. Lyons,* 461 U.S. 95, 105-106 (1983).  A failure on the part of the plaintiff to allege specific facts evidencing a likelihood that he will continue to suffer future injury at the hands of the defendant absent a grant of injunctive relief is fatal to his demand for such relief against the defendant in his official capacity.

Here, although in the caption of his amended complaint, the plaintiff indicates that he is suing only Defendant Murphy in his official capacity in addition to his individual capacity, in the parties section of his amended complaint, the plaintiff appears to indicate that he is suing all of the defendants in their official capacities in addition to their individual capacities.  *See* Amended Complaint, Caption and Parties Section.  To the extent that the plaintiff proceeds against the defendants in their official capacities, this lawsuit violates the Eleventh Amendment.  The District Court therefore lacks subject matter jurisdiction over such a lawsuit.  Accordingly, this lawsuit should be dismissed.

II.   **THE DEFENDANTS ARE ENTITLED TO BOTH SOVEREIGN AND STATUTORY IMMUNITY FROM LIABILITY FOR ANY STATE CONSTITUTIONAL AND COMMON LAW CLAIMS.**

To the extent that the plaintiff's amended complaint can be read to assert any pendent claims against the state defendants[3], in violation of either the Connecticut Constitution or common law, the state defendants are entitled to dismissal of these claims under the common law doctrine of sovereign immunity and the statutory immunity provided by Connecticut General Statutes § 4-165.[4]

A.   **Sovereign Immunity.**

In the instant lawsuit, the plaintiff appears to direct his allegations of wrongdoing at the defendants in their individual and official capacities. *See* Amended Complaint, Caption and Parties Sections. Although the plaintiff sues the defendants in their individual capacities, that is not dispositive of the matter under state law.

In *Miller v. Egan,* 265 Conn. 301, 828 A.2d 549 (2003)*,* the Connecticut Supreme Court recently examined the question of whether a pleading could reasonably be construed to sue a

---

[3]   The defendants recognize that in his response to the defendants' motion to dismiss the amended complaint, the plaintiff asserts that he is suing pursuant to 42 U.S.C. 1983, alleging violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. However, the defendants are asserting this claim of immunity should the court liberally interpret the plaintiff's amended complaint.

[4]   General Statutes § 4-165 provides, in relevant part, as follows:

> **Immunity of state officers and employees from personal liability.** No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment.

series of state defendants in their official capacities despite a claim on the part of the plaintiff that the suit was meant only to sue the defendants in their individual capacities. Recognizing that, under state jurisprudence, the construction of a pleading was a question of law, over which it exercised plenary review, the Supreme Court applied the test set forth in *Spring v. Constantino,* 168 Conn. 563, 568, 362 A.2d 871 (1975), to determine in what capacity the defendants had been sued. The Court concluded that, based upon the nature of the allegations in the complaint, the plaintiff had sued the defendants in their official capacities, and that, as such, they were entitled to sovereign immunity from suit.

In examining the allegations of the complaint, the Court first observed that "the fact that the state is not named as a defendant does not conclusively establish that the action is not within the principle which prohibits actions against the sovereign without its consent …." *Miller*, 265 Conn. at 308, *citing Spring v. Constantino, supra,* at 568. Rather, the Court observed, "the vital test is to be found in the essential nature and effect of the proceeding." *Id.* It then set forth four criteria to determine whether an action is "in effect, one against the state [which] cannot be maintained without its consent: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." *Id.*

The *Miller* court then went on to reiterate long-standing common law principles surrounding the application of the doctrine of sovereign immunity:

We have long recognized the validity of the common-law principle that the state cannot be sued without its consent …. *Horton v. Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977). We have also recognized that *because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. Fetterman v. University of Connecticut,* 192 Conn. 539, 550-51, 473 A.2d 1176 (1984) ….

We have held that a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity; M*artinez v. Department of Public Safety,* 263 Conn. 74, 85-86, ___ A.2d ___ (2003)]; or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute. *Horton v. Meskill, supra,* 172 Conn. 624 ….

Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. *Pamela B. v. Ment,* 244 Conn. 296, 328, 709 A.2d 1089 (1998). Because a court may tailor declaratory and injunctive relief so as to minimize any such interference, and in order to afford an opportunity for voluntary compliance with the judgment, actions that seek injunctive or declaratory relief against a state officer acting in excess of statutory authority or pursuant to an unconstitutional statute do not conflict with the policies underlying the doctrine of sovereign immunity. *Doe v. Heintz,* 204 Conn. 17, 32, 526 A.2d 1318 (1987) ….

This exception does not apply, however, to claims against the state for monetary damages. *See Krozser v. New Haven,* 212 Conn. 415, 423, 562 A.2d 1080 (1989) (plaintiff seeking money damages against state, alleging that defendant's actions violated his constitutional rights, required to seek waiver of immunity from claims commissioner before bringing action in court), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990); *Barde v.*

> *Board of Trustees,* 207 Conn. 59, 60-61, 539 A.2d 1000 (1988)
> (treating plaintiff's claims for injunctive relief and money damages
> separately; as to money damages, plaintiff required to exhaust
> administrative remedies by proceeding through claims
> commissioner; as to injunctive relief, plaintiff's claims of
> constitutional violations not sufficiently established); *Doe v.
> Heintz, supra,* 204 Conn. 36-37 (sovereign immunity barred
> plaintiff's claims for attorney's fees and costs, despite plaintiff's
> allegations that state officer was acting pursuant to an
> unconstitutional statute); *Fetterman v. University of Connecticut,
> supra,* 192 Conn. 553, (treating claims for monetary damages and
> declaratory relief separately and concluding that counts
> "requesting relief by way of damages" were barred by doctrine of
> sovereign immunity).

*Miller, supra,* 265 Conn. at 313-16. (internal quotations omitted) (emphasis supplied).

Here, it is clear from the amended complaint that the State of Connecticut Department of Correction defendants are being sued over matters involving the performance of their official duties on behalf of the State of Connecticut.  In addition, because "a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state," *Miller, supra,* the third prong of the *Miller* test is satisfied.  Finally, if a judgment is entered against the State of Connecticut Department of Correction defendants, Connecticut General Statute § 5-141d requires that the State of Connecticut indemnify its officers and employees for any monetary damages adjudged.[5]  Having met each of the prongs of the applicable test, any

---

[5]     Connecticut General Statutes § 5-141d provides, in pertinent part, as follows:

> (a) The state shall save harmless and indemnify any state officer or
> employee, as defined in section 4-141, and any member of the Public
> Defender Services Commission from financial loss and expense arising
> out of any claim, demand, suit or judgment by reason of his alleged
> negligence or alleged deprivation of any person's civil rights or other act

supplementary state law claims must be found to have been filed against the State of Connecticut Department of Correction defendants in their official capacities (that is, against the "state"), regardless of a liberal interpretation of the complaint to the contrary.

Connecticut law recognizes only two situations in which it is unnecessary for a plaintiff to first seek and obtain permission to sue the state from the claims commissioner before filing suit in court.  A plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity; or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute.  *Miller, supra,* at 316-17.  The burden is on the plaintiff to "show" that his complaint fits within one or both of the enumerated exceptions.  *Id.,* at 314.

Here, however, the Connecticut legislature has not waived, either explicitly or by force of necessary implication, the state's sovereign immunity.  Moreover, the plaintiff does not claim that the defendants acted in excess of their statutory authority or pursuant to an unconstitutional statute.  As such, any such claims against the State of Connecticut Department of Correction defendants are properly construed under Connecticut law as having been filed against them in their official capacities -- that is, against the state -- and are barred by the doctrine of sovereign immunity.

---

or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

B.     **Statutory Immunity.**

Having determined that any pendent state law claims against the defendants are barred by the doctrine of sovereign immunity, it is unnecessary to examine whether the claims brought against them are likewise barred by the statutory immunity created by Connecticut General Statutes § 4-165.  *See Shay v. Rossi,* 253 Conn. 134, 180-81, 749 A.2d 1147 (2000), *overruled in part on other grounds, Miller v. Egan, supra,* 265 Conn. at 325.  However, even assuming *arguendo* that any state law claims were not barred by the doctrine of sovereign immunity, they would nonetheless be barred under § 4-165.

The outcome of the statutory immunity argument is controlled by the decision of the Connecticut Supreme Court in the case of *Martin v. Brady,* 261 Conn. 372, 802 A.2d 814 (2002). In *Martin,* the plaintiff alleged that defendant state police officers conducted an improper search of his home and seizure of his person in violation of his rights under Article 1, §§ 7 and 9 of the Connecticut Constitution.[6]  The sole issue on appeal was whether the defendant State Police officers were entitled to immunity from suit by virtue of statutory, personal immunity under Connecticut General Statutes § 4-165 and, therefore, were not liable to the plaintiff for their alleged acts of misconduct.  *Id.,* 261 Conn. At 373.

---

[6]     The plaintiff in *Martin* also argued that suit was authorized against the defendant state police officers arguing that the Connecticut Supreme Court in *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998), had recognized a cause of action under article first, § 7 of the Constitution of Connecticut.  *See Martin*, *supra*, 64 Conn. App. 433, 780 A.2d 961 (2001), overruled on other grounds, 261 Conn. 372, 802 A.2d 814 (2002).  The *Martin* court rejected that argument, holding that *Binette* applied only to municipal defendants and did not waive sovereign immunity for state officials.

In the posture of that case, the Court deemed it necessary, in order to resolve the claim of statutory immunity, to examine the pleadings to decide whether the plaintiff had alleged sufficient facts with respect to personal immunity under § 4-165 to support a conclusion that the defendants were acting outside the scope of their employment or wantonly, recklessly or maliciously.  In *Martin*, the complaint alleged three separate instances of misconduct on the part of the State Police defendants.  The plaintiff alleged:  (1) that the defendants forcibly entered his home without a search warrant, striking him and pushing him to the floor after he submitted to arrest; (2) that the defendants searched his home pursuant to a search warrant obtained pursuant to a false affidavit; and (3) during the search, smashed windows and broke down doors.  *Id.*, at 377.

The Court reasoned that, in order to determine if a state actor's conduct is caused in the discharge of his or her duties or within the granted state authority, it is necessary to examine the nature of the alleged conduct and its relationship to the duties incidental to the employment.  *Id.*, at 378.  The Court referred to its previous decisions in the cases of *Antinerella v. Rioux*, 229 Conn. 479, 499, 642 A.2d 699 (1994), *overruled in part on other grounds, Miller v. Egan, supra*, 265 Conn. at 325, where it found the defendant's conduct to fall outside the umbrella of immunity because "[t]he defendant's alleged conduct [in soliciting and accepting illegal kickbacks from his deputy sheriffs] was not designed to advance any interest of his employer, the state, and did not serve any legitimate state interest … [being] motivated by purely personal considerations entirely extraneous to his employer's interests," and in *Shay v. Rossi, supra*, at 174, where it determined that "the defendants, individuals employed by the state department of

children and families, had acted beyond the scope of their employment when acting 'solely … to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted …,'" in determining that the allegations of improper search and seizure on the part of State Police officers, with which it was presently confronted, unlike the allegations in *Antinerella* and *Shay*, were *not* arguably outside the scope of employment of the police defendants. *Martin, supra,* at 378-79.

The Martin court next considered whether the plaintiff had sufficiently alleged facts so as to cause the defendants' conduct to fall within the statutory exception for "wanton, reckless or malicious" conduct. Concluding that the plaintiff had failed to carry his burden in this regard, the Court reasoned as follows:

> we have never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165.  In the common-law context, however, we have stated:  In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . In order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  Indeed, in some instances, the mere fact that an official has acted in excess of his or her authority may suffice to prove that the conduct was wanton, reckless or malicious.

*Id.,* at 379 (Internal quotation marks omitted.).  Observing that the facts alleged in the complaint were not inconsistent with an exercise of the statutory authority provided to the State Police pursuant to Connecticut General Statutes § 53a-22, the *Martin* Court concluded that there was no allegation in the complaint from which it could infer that the defendants' conduct was indicative of such a state of mind or that the conduct rose to such a level of egregiousness necessary to be considered wanton, reckless or malicious.  *Id.,* at 380.

The foregoing analysis of statutory immunity conducted by the *Martin* court in that case is similarly dispositive of the allegations of the complaint herein.  The allegations contained in the *Martin* complaint and those in the instant lawsuit are similar in that the allegations set forth in the *Martin* complaint and the allegations set forth in the instant lawsuit both allege "wrongful" actions which fall within the statutory duties of the defendants.  The plaintiff's claim is insufficient to defeat statutory immunity pursuant to § 4-165.  Indeed, disciplining an inmate for an infraction, issuing an inmate a disciplinary report for that infraction, investigating that disciplinary report, providing the inmate a disciplinary hearing for that disciplinary report, finding an inmate guilty of that disciplinary report, and then punishing the inmate for that finding of guilt fall squarely within the statutory duties of the Department of Correction.  Moreover, the complaint is devoid of the sorts of allegations which would arguably carry the State of Connecticut Department of Correction defendants alleged conduct outside the scope of their official duties into an area which could reasonably be construed as wanton, reckless or malicious as the meaning of those terms have been interpreted by the Connecticut courts when examining the extent of immunity under § 4-165.  Indeed, if the instant claims were to be held as beyond the

18

scope of a Department of Correction employee's authority sufficient to overcome the bar of statutory immunity, the doctrine would be diminished to meaningless verbiage. Such was clearly not the intent of the legislature when it enacted on behalf of state officers and employees sued in their individual capacities the statutory protection from suit contained in § 4-165.

The state defendants are entitled to the cloak of sovereign and statutory immunity on any pendent state law claims. Accordingly, the plaintiff is required to file any state law claims before the Claims Commissioner in order to seek and, if possible, obtain a waiver of sovereign and/or statutory immunity.[7]

## III.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THEIR ACTIONS AS ALLEGED IN THE PLAINTIFF'S COMPLAINT.

The shield of qualified immunity generally protects government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998). The availability of the defense turns upon the "objective legal reasonableness" of the allegedly unlawful official action, "assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. at 818-19, 102 S.Ct. at 2739). *See also,*

---

[7]    Indeed, even assuming that the plaintiff obtains a waiver of the State's sovereign or statutory immunity through the process established under Chapter 53 of the Connecticut General Statutes, the waiver of immunity is limited to a trial to the court held in the Superior Courts of the State of Connecticut. *See* Conn. Gen. Stat. § 4-160.

*Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir. 1993).  The qualified immunity defense is intended to "strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997) (citations omitted).  The rule serves to protect government officials from charges that they knowingly violated standards that were in fact unknowable." *Havekost v. U.S. Dept. of Navy,* 925 F.2d 316 (9th Cir. 1991) (citations omitted).

Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 252 (2001), *citing Mitchell v. Forsyth,* 472 U.S. 511, 526, 86 L.Ed. 2d 411, 105 S. Ct. 2806 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* 533 U.S. at 201.  As a result, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.  *Id., citing Hunter v. Bryant,* 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991) (*per curiam*).

In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.  According to *Saucier*, a court required to rule upon the qualified immunity issue must first consider this threshold

question: Taken in the light most favorable to the party asserting the injury, do the facts alleged

show the officer's conduct violated a constitutional right?  *Id., citing Siegert v. Gilley,* 500 U.S.

226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991).  As explained by the Court in *Saucier,*

> In the course of determining whether a constitutional right was
> violated on the premises alleged, a court might find it necessary to
> set forth principles which will become the basis for a holding that a
> right is clearly established. This is the process for the law's
> elaboration from case to case, and it is one reason for our insisting
> upon turning to the existence or nonexistence of a constitutional
> right as the first inquiry.   The law might be deprived of this
> explanation were a court simply to skip ahead to the question
> whether the law clearly established that the officer's conduct was
> unlawful in the circumstances of the case.

*Id.,* 533 U.S. at 201.

If no constitutional right would have been violated were the allegations established,

*Saucier* instructs that there is no necessity for further inquiries concerning qualified immunity.

On the other hand, if a violation could be made out on a favorable view of the parties'

submissions, the next, sequential step is to ask whether the right was clearly established.  *Id.,* 501

U.S. at 201.  This inquiry, it is vital to note, must be undertaken in light of the specific context of

the case, not as a broad general proposition; and it too serves to advance understanding of the

law and to allow officers to avoid the burden of trial if qualified immunity is applicable.  As

more fully articulated by the U.S. Supreme Court in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct.

2508, 153 L.Ed.2d 666 (2002),

> Qualified immunity operates to ensure that before they are
> subjected to suit, officers are on notice that their conduct is
> unlawful.  For a constitutional right to be clearly established, its
> contours must be sufficiently clear that a reasonable official would

> understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.,* 536 U.S. at 739, (internal citations and quotations omitted). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz, supra.* If the law did not put the officer on notice that his conduct would be clearly unlawful, judgment based on qualified immunity is appropriate. *Id.*

Of course, there is no definitive guide as to when a right is clearly established. Thus, while the defendants do not question the existence of an inmate's right to due process under the Fourteenth Amendment generally,

> the relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract ..., but whether the defendants should have known that the specific actions complained of violated  ... [that right]. Such an inquiry requires that a court define the constitutional right with some specificity. If the right is defined too broadly, plaintiff would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*Lewis v. Cowen,* 165 F.3d 154, 167 (2d Cir. 1999) (internal quotations and citations omitted). In the absence of controlling precedent, decisions from other circuits must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his

conduct, if challenged on constitutional grounds, would be found wanting. *Marsh v. Arn,* 937

F.2d 1056, 1068 (6th Cir. 1991) (citations omitted).[8]

Assuming that the factual allegations in a particular case demonstrate that there exists an

underlying constitutional right, and that this right was clearly established in a particularized

sense at the time the defendants acted, the final inquiry which must be undertaken in the

qualified immunity analysis is the question of whether, despite the nature of the constitutional

right at issue, a reasonable officer could have been mistaken as to the legal constraints upon his

conduct.   If such a mistake as to the legal constraints upon his conduct was objectively

reasonable, the defendant is nonetheless entitled to qualified immunity.

> The concern of the immunity inquiry is to acknowledge that
> reasonable mistakes can be made as to the legal constraints on
> particular [governmental] conduct.  It is sometimes difficult for an
> [official] to determine how the relevant legal doctrine [...] will
> apply to the factual situation the [official] confronts.    If the
> [official's] mistake as to what the law requires is reasonable,
> however, the [official] is entitled to the immunity defense.

*Saucier v. Katz, supra.  See also, Malley v. Briggs,* 475 U.S. 335, 343, 89 L.Ed.2d 271, 106 S.Ct.

1092 (1986) (qualified immunity leaves ample room for mistaken judgments).  Thus, qualified

immunity protects "all but the plainly incompetent or those who knowingly violate the law, or

those who act where "the law clearly proscribed the actions" taken."  *Saucier, supra,* (quoting

---

[8]      As stated by the Second Circuit in *Poe v. Leonard,* 282 F.3d 123 (2nd Cir. 2002), "[i]t is
unclear the extent to which we may rely on the case law of other circuits to determine
whether the law was clearly established."  *Id.,* 282 F.3d at 141, n. 15.  Accordingly, in
those cases where the Second Circuit has relied upon the law established in other circuits
as a guide for its own legal analysis, it has done so only where our precedent had
foreshadowed the development of the relevant standards that other circuits had clearly
established.  *Id., citing Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997).

*Anderson v. Creighton,* 483 U.S. at 638-39).  This aspect of the doctrine of qualified immunity recognizes that law enforcement officers are only human, and inevitably, accidents and mistakes of judgment will happen.  Such mistakes alone do not open officers to personal liability.  *Wren v. Towe,* 130 F.3d 1154, 1159 (5th Cir. 1997), *cert. denied,* 525 U.S. 815, 142 L. Ed. 2d 40, 119 S. Ct. 51 (1998); *accord, Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992) ( indicating that qualified immunity affords tolerance for mistakes of judgment traceable to unsettled law, faulty information, or contextual exigencies).  Accordingly,

> In cases involving the conduct of police officials, … even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act . . . .  The objective reasonableness test is met - and the defendant is entitled to qualified immunity - if officers of reasonable competence could disagree on the legality of the defendant's actions . . . .  In qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather with the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene . . . .  [W]hen the factual record is not in serious dispute . . . [t]he ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.

*Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995) (quotations and internal citations omitted); *accord, Oliviera v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995) (immunity ordinarily should be decided by the court in those cases where the facts concerning the availability of the defense are undisputed).

A review of the plaintiff's claim which asserts that he was denied his rights under the Due Process Clause of the Fourteenth Amendment is illustrative.  Since the plaintiff does not allege that he had a protected liberty interest and that he was deprived of such interest without being afforded due process of the law, the plaintiff fails to state a claim under the Due Process Clause of the Fourteenth Amendment, thereby failing to surmount the first step in the qualified immunity analysis:  Do the facts alleged show that the officer's conduct violated an established constitutional right?  *See* This Memorandum, Section VII, for a detailed discussion regarding the plaintiff's failure to state a claim under the Due Process Clause of the Fourteenth Amendment. Therefore, an analysis of the plaintiff's allegations coupled with an analysis of the relevant law establishes that the defendants are entitled to qualified immunity for their actions.

Thus, we urge the court to dismiss the plaintiff's complaint on the basis of qualified immunity.

**IV.     THE PLAINTIFF'S LAWSUIT IS BARRED FOR FAILURE TO EXHAUST HIS PRISON ADMINISTRATIVE REMEDIES UNDER THE PRISON LITIGATION REFORM ACT OF 1995**

The plaintiff alleges that the defendants  violated his rights under the Due Process Clause of Fourteenth Amendment.  Specifically, the plaintiff appears to contest the issuance of  two disciplinary reports, one relating to fighting on May 2, 2002 and the other relating to security risk group safety threat membership on May 15, 2002,  the investigation of those disciplinary reports, the hearings of those disciplinary reports on May 9, 2002 for fighting and on May 16, 2002 for security risk group safety threat membership, the two guilty findings regarding those disciplinary reports, the punishment relating to those guilty findings - the placement in the Restrictive

Housing Unit as punitive segregation, and the designation of security risk group safety threat membership, apparently alleging, among other things, that the reports were unfairly issued in that the second report was issued on the basis of statements of confidential informants, and that the disciplinary hearings were unfairly conducted in that at the second hearing a specific inmate's advocate was not present and the plaintiff was not permitted to question some of his witnesses in a specific manner.  It should be noted that it is not clear from the amended complaint exactly what the plaintiff's complaints are regarding the issuance of the first disciplinary report and the manner in which the first disciplinary hearing was conducted, except for the plaintiff's contention that he is innocent of the charge.  It is the position of the defendants that this action is barred for failure to exhaust prison administrative remedies under the Prison Litigation Reform Act of 1995.

With regard to any of a prisoner's federal constitutional rights, the United States Supreme Court recently ruled that Connecticut prisoners must exhaust their prison administrative remedies before bringing suit as required by the Prison Litigation Reform Act of 1995, 45 U.S.C. § 1997e(a) (PLRA); *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 982, 152 L.Ed.2d 12 (2002). Exhaustion is required regardless of whether the administrative remedy provides for monetary awards or might, for some other reason, be deemed futile.  *Booth v. Churner*, 532 U.S. 731, 215 S.Ct. 1819, 149 L.Ed.2d 958 (2001).  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, *supra* at p. 532.  The exhaustion requirement also applies to claims for inadequate medical treatment.  *See O'Neill v.*

*Bush*, No. 3:00CV1202(RNC)(Ruling and Order), Attachment A; *Neal v. Goord*, 267 F.3d 116,

121 (2d Cir. 2001), *overruled in part by Porter v. Nussle, supra* at 532.

The PLRA requires that the inmate exhaust all available remedies, including appeals,

before suit can be filed.    *Booth v. Churner*, *supra* at 735; *Berry v. City of New York*, 2002 U.S.

Dist. LEXIS 10520 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431 (W.D.N.Y. 2002);

*Alvarez v. United States*, 2000 U.S. Dist. LEXIS 6079 (S.D.N.Y. 2000); *Gentry v. Maxwell* 2002

U.S. App. LEXIS 9637 (6th Cir. 2002); *Flath v. Chavez*, 2001 U.S. App. LEXIS 18125 (6th Cir.

2001); *Thaddeus-X v. Williams*, 2000 U.S. App. LEXIS 9664 (6th Cir. 2000);  *Utley v. Hiatte*,

2000 U.S. App. LEXIS 5255 (6th Cir. 2000); *Shugart v. Fleming*, 2002 U.S. LEXIS 1611 (N.D.

Tex. 2002); *Hernandez-Salazar v. FMC Jail Unit*, 2002 U.S. Dist. LEXIS 1169 (N.D. Tex.

2002); *McCrew v. Calvo*, 2002 U.S. Dist. LEXIS 5900 (N.D. Cal. 2002);  *Boyd v. Dept. of*

*Correction,* 2000 U.S. Dist. LEXIS 10806 (E.D. Pa. 2000); *Poer v. Miles*, 2000 U.S. LEXIS

20620 (W.D. Tex. 2000); *Tripp v. Carter*, 1999 U.S. LEXIS 16487 (N.D. Ill. 1999).

Where a plaintiff has several grievable issues, he must demonstrate exhaustion of each

one, or his complaint will be dismissed for failure to exhaust administrative remedies as to any

issue that was not so grieved.    *See Vines v. Lojkuc*, No. 3:01CV361 (WWE) (HBF)

(Memorandum of Decision, August 30, 2002), Attachment B.

The State of Connecticut Department of Correction has administrative remedies

applicable to the plaintiff's constitutional claims – a  grievance procedure for all manner of

prison life, including medical grievances.  DOC Directive 9.6, Sections 14, 15, 16, and 17,

Medical Grievances, Level 1 Review, Level 2 Review, Level 3 Review, Attachment C.  The

Department of Correction also has a grievance process regarding other aspects of prison life such as: 1. A grievance procedure regarding the interpretation and application of policies, rules and procedures of the Department of Correction, DOC Directive 9.6, Sec. 6, Administrative Remedies, subdivision A(1), Attachment C; 2. A grievance procedure for individual employee actions, DOC Directive 9.6, Sec. 6, Administrative Remedies, subdivision A(3), Attachment C; 3. A grievance procedure for any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, DOC Directive 9.6, Sec. 6, Administrative Remedies, subdivision A(5), Attachment C; and 4. A grievance procedure for any and all other complaints of any nature concerning prison life, DOC Directive 9.6, Sec. 6, Administrative Remedies, subdivision A(7), Attachment C.

In the instant case, the plaintiff has indicated that he exhausted available administrative remedies, but he has failed to explain the steps taken and he has failed to attach proof of exhaustion. He only has written in the space provided on the complaint form, "I exhausted all remedies by appealing my disciplinary reports." *See* Amended Complaint, pg. 6. Therefore, since the plaintiff has failed to explain the steps taken and he has failed to attach proof of exhaustion, the plaintiff has failed to exhaust his administrative remedies.

Thus, we urge the court to dismiss the plaintiff's amended complaint for failure to exhaust his prison administrative remedies.

**V.   SINCE THE PLAINTIFF DID NOT ALLEGE PHYSICAL INJURY, HIS CLAIM FOR COMPENSATORY  DAMAGES IS PRECLUDED PURSUANT TO THE PRISON LITIGATION REFORM ACT UNDER 42 U.S.C. § 1997e(e)**

The plaintiff does not appear to allege that he was ever physically harmed in any way by either any employee of the Department of Correction or any other inmate while the plaintiff was confined to MacDougall-Walker Correctional Institution during the time period in question, May of 2002.   The plaintiff solely complains about the issuance of two disciplinary reports, the investigation of the disciplinary reports, the hearing of the disciplinary reports, the findings of guilt regarding the disciplinary reports, and the punishment for the findings of guilt.

The Prison Litigation Reform Act provides:

No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).   The Second Circuit has held that this provision does apply to constitutional claims.   *Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2001).   In its *Thompson* decision, the Second Circuit followed some other circuits in holding that this prohibition extends only to claims for compensatory damages, and does not extend to claims for punitive or nominal damages, or to claims for declaratory or injunctive relief.   *Id.* at 418. According to the law as interpreted by the Second Circuit, then, any of the plaintiff's claims for compensatory damages are subject to dismissal under § 1197e(e).   The plaintiff in this case does appear to seek punitive damages.

Thus, the defendants move to dismiss the plaintiff's claims for compensatory damages pursuant to § 1197e(e).

## VI.    THE PLAINTIFF FAILS TO ALLEGE ADEQUATE PERSONAL INVOLVEMENT ON THE PART OF DEFENDANT MURPHY

The plaintiff appears to only allege that Defendant Murphy held a supervisory position within the Department of Correction during the time period in question, and that Defendant Murphy denied two administrative appeals filed by the plaintiff regarding the May 9, 2002 and May 16, 2002 disciplinary hearings and the subsequent findings of guilt.  *See* Amended Complaint, Section D, Cause of Action.  The plaintiff fails to allege that Defendant Murphy had any sort of personal involvement in the issuance of the disciplinary reports, the investigation of the disciplinary reports, the hearings of the disciplinary reports, the findings of guilt, or the punishments – the gravaman of the plaintiff's amended complaint.  In his amended complaint, the plaintiff does not allege a due process violation regarding the denial of the two administrative appeals.  The plaintiff merely suggests that he is unhappy with the denials.

The aforementioned allegations are insufficient to sustain a cause of action against Defendant Murphy under 42 U.S.C. § 1983.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws."  *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)(quoting 42 U.S.C. § 1983).  Otherwise put, a "plaintiff must...allege a tangible connection between the acts of the defendants and the injuries suffered. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Thus, in order to be held liable under 42 U.S.C. § 1983, the defendant must have a role in subjecting the plaintiff to a deprivation of a federally guaranteed right.  That is to say, a showing of personal involvement is a necessary

prerequisite for establishing liability under § 1983. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973), *rev'd on other grounds, Graham v. Connor*, 490 U.S. 386 (1989); *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).

In the prison context, "[a] supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal ; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

The amended complaint is devoid of allegations that Defendant Murphy had any involvement with the issuance of the disciplinary reports, the investigation of the disciplinary reports, the hearings of the disciplinary reports, the findings of guilt, or the punishments. The plaintiff's amended complaint is deficient. It appears that plaintiff is seeking to hold Defendant Murphy liable solely because he holds supervisory authority in the Connecticut Department of Correction. These allegations simply do not suffice. In order to state cognizable § 1983 claim, therefore, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the...chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). Moreover, the Supreme Court has ruled that the doctrine of respondeat superior does not apply under 42 U.S.C. § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692-95 (1978).

Additionally, the fact that the plaintiff may have complained to Defendant Murphy and that Defendant Murphy may have responded is immaterial. In fact, "The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability." *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y. 1997). Indeed, "[i]t is well established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Higgins v. Artuz*, 1997 WL 46505 at *7 (S.D.N.Y. 1997); *See also, e.g., Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (Defendant "merely asserts that he wrote to these [supervisory] defendants [including the Commissioner and Supt.] complaining about the conduct of various Medical and Correctional Defendants and that his complaints were ignored. These allegations are insufficient to hold these Official/Supervisory Defendants liable under § 1983."); *Woods v. Goord*, 1998 WL 740782 at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints, however, does not render [Supt.] Artuz personally liable under § 1983."); *Cox v. Colgane*, 1998 WL 148424 at *9 (S.D.N.Y. Mar. 27, 1998) (ignoring letter and request for action not sufficient). Thus, even if the plaintiff did complain, in the form of an administrative appeal, to Defendant Murphy, and even if that complaint was denied, Defendant Murphy cannot be liable under 42 U.S.C. § 1983. Merely responding to a complaint regarding a past incident does not personally involve the person who responded to the complaint in the past incident.

In sum, therefore, plaintiff fails to state a viable claim against the Defendant Murphy. Thus, we urge the court to dismiss the plaintiff's claims against Defendant Murphy.

## VII.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR A VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

The plaintiff contests the issuance of  two disciplinary reports, one relating to fighting on May 2, 2002 and the other relating to security risk group safety threat membership on May 15, 2002,  the investigation of those disciplinary reports, the hearings of those disciplinary reports on May 9, 2002 for fighting and on May 16, 2002 for security risk group safety threat membership, the two guilty findings regarding those disciplinary reports, the punishment relating to those guilty findings - the placement in the Restrictive Housing Unit as punitive segregation, and the designation of security risk group safety threat membership, apparently alleging, among other things, that the reports were unfairly issued in that the second report was issued on the basis of statements of confidential informants, and that the disciplinary hearings were unfairly conducted in that at the second hearing a specific inmate's advocate was not present and the plaintiff was not permitted to question some of his witnesses in a specific manner.  *See* Amended Complaint, Section D, Cause of Action.[9]  It should be noted that it is not clear from the amended complaint exactly what the plaintiff's complaints are regarding the issuance of the first disciplinary report and the manner in which the first disciplinary hearing was conducted, except for the plaintiff's

---

[9]    The defendants request that the court take judicial notice, as permitted in a motion for a judgment on the pleadings, of the plaintiff's Connecticut Department of Correction Disciplinary History regarding the punishment the plaintiff received for fighting on May 2, 2002, which was 15 days punitive segregation, 90 days loss of telephone privileges, 30 days confined to quarters, and the punishment the plaintiff received for security risk group safety threat membership, which was 15 days punitive segregation, 60 days loss of telephone privileges, 60 days loss of social visit privileges, 30 days loss of recreation, and the designation of security risk group threat membership.  *See* Plaintiff's Connecticut Department of Correction Disciplinary History, pg. 5, Attachment D.

contention that he is innocent of the charge. The plaintiff alleges that as a result of the foregoing, the defendants violated the plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution.

The aforementioned allegations are insufficient to state a claim for a violation of the plaintiff's right to due process under the Fourteenth Amendment.

The defendants complied fully with the due process requirements set forth by the United States Supreme Court when they sanctioned the plaintiff for fighting and for security risk group safety threat membership. Department of Correction policy dictates that a correctional officer may give an inmate a disciplinary report when the officer believes that an inmate's behavior is violative of established institutional rules or is threatening to the safety and security of the facility. Prison officials are accorded great deference in matters of prison security. *Bell v. Wolfish*, 441 U.S. 520, 548, 99 S.Ct. 1861, 1878 (1979). Certainly, conduct such as fighting and as being a security risk group safety threat member, i.e. gang member, is not only violative of prison rules, but is also the type of conduct properly punishable by the use of a disciplinary report.

The Department of Correction administrative directives and constitutional guidelines require that an inmate who is issued a disciplinary report be provided with advanced written notice of his hearing, the opportunity to have an advocate, an opportunity to call witnesses, and a written summary of the evidence relied upon at his hearing. The standards for due process at a prison disciplinary hearing have been set forth by the Supreme Court in *Wolff v. McDonnell*, 418

U.S. 539, 94 S.Ct. 2963 (1974).  The *Wolff* Court held that due process requires at least the following:

      1.     Written notice of the claimed violation in advance of the hearing;

      2.     A written statement of the fact-finder as evidence relied upon at the hearing and the reasons for the disciplinary action taken[10];

      3.     The inmate be permitted to call witnesses and present evidence in his defense when it will not be unduly hazardous to institutional safety or correctional goals.  *Wolff* at 418 U.S. 564-66; *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).  *See also Walker v. McClellan*, 126 F.3d 127 (2d Cir. 1997), for the propositions that an inmate's right to call witnesses in a disciplinary hearing was qualified by the limitation that exercise of the right would not be permitted to impinge on correctional goals and a hearing officer is permitted to exclude irrelevant or unnecessary testimony.  The *Wolff* Court noted that these were the minimal requirements to ensure due process at disciplinary proceedings which resulted in a *loss of good time credits* and did not suggest that these procedures would be

---

[10]    The plaintiff also appears to take issue with the reliance upon evidence provided by two confidential informants for the issuance of the second disciplinary report, the report relating to security risk group safety threat membership.  Apparently, the plaintiff is alleging that reliance upon confidential information is insufficient to make a finding of guilt and therefore, a denial of due process.  The Second Circuit Court of Appeals in *Taylor v. Rodriguez, et al.*, 238 F.3d 188 (2001), determined that the disciplinary hearing officer must review or assess the credibility of the confidential informant who provides the information upon which the hearing officer relies.  Here, the plaintiff solely complains of the reliance upon confidential information, he does not claim that the disciplinary hearing officer failed to assess the reliability of the two confidential informants.

required for the imposition of lesser penalties such as the loss of visits, recreation, or social phone privileges.  *Wolff*, at 418 U.S. 572.

Here, in his amended complaint, the plaintiff does not allege that he was deprived of any of the aforementioned due process requirements.  The plaintiff does take issue with the substitution of one advocate for another advocate at the second disciplinary hearing, but it is not constitutionally required that the inmate be permitted to choose or approve of his advocate.  The plaintiff also appears to take issue with not being permitted to question some of his witnesses in a specific manner, but it is not constitutionally required that the inmate be permitted to call any witness and present evidence in any manner if it may impinge upon correctional goals or if is irrelevant or unnecessary testimony.  Finally, and most importantly, the plaintiff has not alleged the loss of good time credits.  Here, the plaintiff's "losses" included  solely 15 days punitive segregation, 90 days loss of telephone privileges, 30 days confined to quarters for the fighting charge, and 15 days punitive segregation, 60 days loss of telephone privileges, 60 days loss of social visit privileges, 30 days loss of recreation, and the designation of security risk group safety threat membership for the security risk group safety threat membership charge.

In 1995, the United States Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), further examined the issue of the standard to be applied when determining whether a liberty interest sufficient to invoke due process exists in a deprivation alleged with regard to challenged prison conditions.  The Court held in *Sandin* that challenged prison conditions cannot give rise to a due process violation unless those conditions constitute "atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.   The *Sandin* Court

explained:

> The punishment of incarcerated prisoners...effectuates prison management
> and prisoner rehabilitative goals.  See *State v. Alvey,* 67 Haw. 49, 55, 678
> P.2d 5, 9 (1984).   Admittedly, prisoners do not shed all constitutional
> rights at the prison gate, *Wolff,* 418 U.S. at 555, but "'lawful incarceration
> brings about the necessary withdrawal or limitation of many privileges and
> rights, a retraction justified by the considerations underlying our penal
> system.'"   *Jones,* 433 U.S. at 125, quoting *Price v. Johnston,* 334 U.S.
> 266, 285, 92 L. Ed. 1356, 68 S. Ct. 1049 (1948).   Discipline by prison
> officials in response to a wide range of misconduct falls within the
> expected parameters of the sentence imposed by a court of law.

> This case, though concededly punitive, does not present a dramatic
> departure from the basic conditions of Conner's indeterminate
> sentence...the State's actions in placing him there [segregated
> confinement] for 30 days did not work a major disruption in his
> environment.

*Id.* at 485-486.  *See also Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) for the proposition

that a 30 day loss of commissary privileges and cell restriction do not implicate due process

concerns; *Rosario v. Selsky*, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec. 28,

1995), holding that 120 days confinement in special housing unit with loss of privileges was not

punishment "qualitatively different" from punishment normally suffered by one in prison;

*Williams v. Keane*, No. 95 Civ. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25

1997) for the proposition that keeplock or confinement of 30 days or less in New York is not

"atypical or significant" hardship under *Sandin*; *Fine v. Gallow*, No. 3:97cv497 (SRU), 2000 WL

565232, at *9 (D. Conn. Mar. 28, 2000) granting defendants' motion for summary judgment on

the ground that two sanctions of five days confinement in punitive segregation and fifteen days

confined to quarters, and seven days confinement in punitive segregation, fifteen days confined to quarters and thirty days loss of commissary privileges did not constitute an atypical and significant hardship; *McNellis v. Meachum*, Civ. No. 2:92cv936 (PCD) (D. Conn. Oct. 4, 1995), holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under *Sandin*.

The plaintiff has alleged no facts suggesting that the sanctions he received were qualitatively different from ordinary prison life. The time of his confinement in segregation on the two separate charges was only a total of thirty days, fifteen days on each charge. Thus, as a matter of law, he fails to demonstrate that he suffered an atypical and significant hardship, and therefore he fails to demonstrate that he was deprived of a protected liberty interest without being afforded due process of the law.

Thus, we urge the court to dismiss the plaintiff's amended complaint for failure to state a claim for a violation of the plaintiff's right to due process under the Fourteenth Amendment.

**CONCLUSION**

For all of the foregoing reasons, judgment must be issued in favor the Department of

Correction defendants in accordance with the foregoing arguments.

DEFENDANTS,
Cleaver, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:___/s/_____
Kathleen A. Keating
Assistant Attorney General
Federal Bar No. ct25247
110 Sherman Street
Hartford, CT  06105
Telephone:  (860) 808-5450
E-mail:  kathleen.keating@po.state.ct.us


**CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid,

this 17th day of December 2004, to:

Cyrus Griffin, Inmate No. 262493
Northern Correctional Institution
287 Bilton Road, PO Box 665
Somers, CT  06071


___/s/_____
Kathleen A. Keating
Assistant Attorney General