UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
CYRUS GRIFFIN                   :
                                :           PRISONER
     v.                         :    Case No. 3:03CV1029(DJS)(TPS)
                                :
CLEAVER, et al.¹                :
```

RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Cyrus Griffin ("Griffin") is an inmate currently confined at Northern Correctional Institution in Somers, Connecticut. He brings this civil rights action pro se pursuant to 28 U.S.C. § 1915. Griffin alleges that defendants deprived him of his Fourteenth Amendment right to due process in connection with two disciplinary reports and the ensuing disciplinary hearings. Defendants have filed a motion for judgment on the pleadings. For the reasons that follow, the defendants' motion is granted.

---

[1] The named defendants in the amended complaint are Captain Michael Cleaver; Lieutenant Robert Meulemans; Correctional Treatment Officer Jason Martson, incorrectly named as Mastos; Correctional Counselor Marc Cooper; Correctional Officer Gregory Williams; Correctional Counselor Richard Werner; Correctional Counselor William Bourassa; Captain Steven Frey; Correctional Counselor Robert Clark; Correctional Officer Neil Cormier, incorrectly named as Cormein; and Deputy Commissioner Brian Murphy.

I.  <u>Standard of Review</u>

The Rule 12(c) standard for judgment on the pleadings is essentially the same as that applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  <u>See</u> <u>Burnette v. Carothers</u>, 192 F.3d 52, 56 (2d Cir. 1999).  <u>See also</u> <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir.), <u>cert. denied</u>, 513 U.S. 816 (1994).  The court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to plaintiff.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Flores v. Southern Peru Copper Corp.</u>, 343 F.3d 140, 143 (2d Cir. 2003).  Dismissal is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>See</u> <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 654 (1999); <u>Sweet v. Sheahan</u>, 235 F.3d 80, 83 (2d Cir. 2000).  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" <u>York v. Association of Bar of City of New York</u>, 286 F.3d 122, 125 (2d Cir.) (quoting <u>Scheuer</u>, 416 U.S. at 236), <u>cert. denied</u>, 537 U.S. 1089 (2002). In other words, "'the office of a motion [for judgment on the pleadings] is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  <u>Eternity</u>

Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  In its review of the motion for judgment on the pleadings, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  The Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants."  Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

II. Facts

The court accepts as true the following allegations taken from the amended complaint.

On May 2, 2002, Griffin was confined in the general population at the MacDougall-Walker Correctional Institution.  He was playing cards with another inmate when a fight broke out on the tier above them.  Griffin tried to get the attention of the correctional officer on duty to have his cell door opened so he could enter his cell.  When he failed to get the guard's attention, he just stood outside his cell door.

The inmate with whom Griffin had been playing cards began to fight with another inmate.  Griffin tried to stop the fight.

3

Griffin and another inmate were able to separate the two.  When correctional officers, including defendant Williams, responded to the tier, all four inmates were handcuffed and taken to the restrictive housing unit along with a fifth inmate who had been standing in the general vicinity of the fight.  After correctional staff reviewed a videotape of the incident, the fifth inmate was released and returned to his cell.  Griffin received a disciplinary report for fighting.  Defendant Cleaver said that he would review the videotape to determine whether Griffin was fighting or trying to stop the fight.  He also said, however, that he did not believe Griffin's account of the incident, that he was pursuing all members of the security risk group Elm City Boys and that he was going to send all members of the Elm City Boys to Northern Correctional Institution.

   Defendant Cooper was assigned to investigate Griffin's disciplinary charge for fighting.  He spoke with Griffin on May 5, 2002, and told him that the fight on the top tier was not gang-related.  On May 9, 2002, Griffin appeared at a disciplinary hearing before defendant Meulemans and was found guilty of fighting.  The disciplinary finding was based on information provided by defendant Marston.

   The following day, he received a second disciplinary report for Security Risk Group affiliation based upon the reports of

confidential informants that Griffin was an active member of the Elm City Boys and that the fight on the lower tier was the result of disrespect shown toward members of the Elm City Boys. Defendants Clark and Cormier were assigned to investigate the charge. Defendant Clark interviewed Griffin. During the interview, Griffin asked defendant Clark to interview the other inmates to establish that the May 2, 2002 fight was not gang-related.

On May 15, 2002, Griffin received a duplicate of the May 10, 2002 disciplinary report with the charge changed from Security Risk Group affiliation to Security Risk Group Safety Threat. Defendant Frey signed the substitute disciplinary report. The hearing on this disciplinary report was held on May 16, 2002, again before defendant Meulemans. Defendants Clark and Cormier were present at the hearing but Griffin's advocate, defendant Bourassa, was not present. When Griffin tried to explain that he was not involved in the May 2, 2002 fight and attempted to call the other three inmates as witnesses, he was told that the purpose of the hearing was not related to the fight but rather to defend himself against the reports of the confidential informants. Defendant Werner, the substitute advocate, had not interviewed any of the witnesses and offered no assistance. Griffin was found guilty and transferred to Northern Correctional

5

Institution. Griffin appealed both findings to defendant Murphy. Both appeals were denied.

III. Discussion

On February 27, 2004, defendants filed a motion to dismiss this action on four grounds: the Eleventh Amendment precludes any award of damages against defendants in their official capacities, defendants are protected by sovereign immunity from any state constitutional or common law claims, defendants are protected by qualified immunity and Griffin has no protected liberty interest in his classification. In response, Griffin argued that he was not challenging his classification and was not seeking damages from defendants in their official capacities. On August 18, 2004, the court granted defendants motion with regard to any claim for damages against defendant Murphy in his official capacity and any claim challenging classification and denied the motion in all other respects.

Defendants now have filed a motion for judgment on the pleadings. They assert seven arguments in support of their motion: (1) the Eleventh Amendment bars all claims for damages against defendants in their official capacities; (2) defendants are immune from suit for violation of the Connecticut Constitution or common law; (3) defendants are protected by qualified immunity; (4) Griffin failed to exhaust his

6

administrative remedies before commencing this action; (5) Griffin has not alleged that he suffered any injury as require under 42 U.S.C. §1997e(e); (6) Griffin has failed to demonstrate the personal involvement of defendant Murphy; and (7) Griffin fails to state a claim for denial of his Fourteenth Amendment right to due process.

    A.   <u>Eleventh Amendment</u>

In the ruling on defendants' motion to dismiss, the court determined that Griffin named defendant Murphy in his individual and official capacities and all other defendants in their individual capacities. In addition, the court granted defendants' motion to dismiss as to any claims for damages against defendant Murphy in his official capacity.

Defendants revisit this argument in their motion for judgment on the pleadings. Defendants now state that because Griffin states in his description of the parties in the amended complaint that each defendant was acting in his official capacity as a correctional employee, he may be naming them in their official capacities. The court disagrees.

First, Griffin has stated that he has not named any defendant except Murphy in his official capacity. Second, Griffin included these statements in response to the question on the complaint form regarding whether the defendant was acting

7

under color of state law.  The court construes these statements to indicate that Griffin was attempting to distinguish between the defendants acting in their capacities as correctional officers and as private citizens.  As the court already has dismissed all claims for damages against defendant Murphy in his official capacity, the motion is denied as moot on this ground.[2]

    B.   <u>State Law Claims</u>

Defendants contend that they are immune from suit for state law claims.  Defendants raised this same argument in their motion to dismiss.  In response, Griffin stated that he was not asserting any state law claims.  The court denied defendants' motion to dismiss on this ground without prejudice to renewal should Griffin assert state law claims.  The record contains no evidence suggesting that Griffin has asserted any state law claims in this case.  Thus, there is no basis for revisiting this issue.  Defendants' motion for judgment on the pleadings is denied on this ground.

    C.   <u>Exhaustion of Administrative Remedies</u>

Defendants contend that judgment must be entered in their favor because Griffin has not attached to his amended complaint

---

[2] Defendants also argue that Griffin's claim for injunctive relief is barred by the Eleventh Amendment.  The court need not address this argument as it concludes, below, that Griffin fails to state a claim for denial of due process.

evidence demonstrating that he exhausted his administrative remedies prior to commencing this action.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001).

The Second Circuit considers the failure to exhaust administrative remedies an affirmative defense. "A defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [that plaintiff first exhaust all administrative remedies]." Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss or motion for judgment on the pleadings. Rather, defendants must present proof of non-exhaustion. See also Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002) ("[I]n the Second Circuit,

9

failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense . . . and . . . defendant bears the burden of proving plaintiff's failure to comply with the exhaustion requirement")(citations omitted); Hallett v. New York State Dep't of Correctional Serv., 109 F. Supp. 2d 190, 196-97 (S.D.N.Y. 2000) (same).  But see Snider v. Melindez, 199 F.3d 108, 111-14 (2d Cir. 1999) (holding that creating an exception to this rule by permitting the court to dismiss a complaint sua sponte, after notice to the plaintiff and an opportunity to be heard, where the plaintiff's failure to exhaust administrative remedies under the PLRA is "readily apparent," or "unambiguously established in the record").

Defendants urge the court to dismiss this action because Griffin failed to attach to his amended complaint evidence proving that he exhausted his administrative remedies.  Because exhaustion of administrative remedies is an affirmative defense, however, the burden of demonstrating failure to exhaust rests with defendants, not Griffin.  The burden usually is satisfied by affidavits from the grievance coordinator documenting the grievances filed by an inmate and the absence of any grievance on a particular issue.  Such evidence, even if provided, cannot be considered on a motion for judgment on the pleadings. Defendants' motion for judgment on the pleadings is denied

10

without prejudice on this ground.

    D.   <u>Failure to State a Claim</u>

Defendants next argue that Griffin fails to state a claim for violation of his right to due process.

To state a claim for violation of procedural due process, Griffin first must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. <u>See</u> <u>Tellier v. Fields</u>, 230 F.3d 502, 511 (2d Cir. 2000) (citations omitted). In accordance with the Supreme Court's decision in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Second Circuit applies a two-part test to determine whether an inmate possesses a protected liberty interest. <u>See</u> <u>id.</u> An inmate has a protected liberty interest "only if the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation." <u>Id.</u> (citations and internal quotation marks omitted).

The court takes judicial notice of Griffin's disciplinary history. (<u>See</u> Defs.' Mem. Attachment D.) Griffin received disciplinary sanctions of 15 days confinement in punitive segregation, 90 days loss of telephone and 30 days confined to quarters at the first hearing and 15 days confinement in punitive segregation, 60 days loss of telephone, 60 days loss of social

11

visits and 30 days loss of recreation at the second hearing. Inmates should reasonably anticipate confinement in segregation. See Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993); see also Frazier v. Coughlin, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that 120 day confinement in segregation followed by 30 day loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process); Rosario v. Selsky, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec 28, 1995) (holding that 120 days confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison).

The Second Circuit has not adopted a bright line test to determine when confinement constitutes an atypical and significant hardship, but "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin." Williams v. Keane, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases). See also Nicholson v. Murphy, No. 3:02cv1815(MRK), 2003 WL 22909876, at *10-*11 (D. Conn. Sept. 17, 2003) (holding that confinement in segregation for thirty days or less is not an atypical and significant hardship); Fine v.

Gallow, No. 3:97cv497(SRU), 2000 WL 565232, at *9 (D. Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days confinement in punitive segregation and fifteen days confined to quarters, and seven days confinement in punitive segregation, fifteen days confined to quarters and thirty days loss of commissary privileges did not constitute an atypical and significant hardship); McNellis v. Meachum, Civ. No. 2:92cv936 (PCD) (D. Conn. Oct. 4, 1995) (holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under Sandin).

In considering Griffin's claim, the court aggregates the two sanctions. See Sealey v. Giltner, 197 F.3d 578, 587 (2d Cir. 1999) (requiring the court to aggregate sanctions that cause the inmate to serve consecutive time in segregation). Griffin has alleged no facts suggesting that the sanctions he received were qualitatively different from ordinary prison life. Thus, the court concludes that Griffin's thirty day confinement in segregation is not an atypical and significant hardship and does not give rise to a liberty interest under Sandin. In addition, Griffin has no constitutional right to telephone use, social visits and commissary privileges. See Overton v. Bassetta, 539 U.S. 126, 137 (2003) (holding that regulation denying visitation for two years was not a "dramatic departure from accepted

13

standards for conditions of confinement"); Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000) (holding that "30-day loss of commissary privileges and cell restriction do not implicate due process concerns"); Frazier, 81 F.3d at 317-18 (holding that 30 day loss of recreation, loss of commissary privileges and telephone use did not state a cognizable claim for denial of due process).  Thus, these sanctions also do not support a claim for denial of due process.

In opposition to defendants' motion, Griffin states that, after serving the sanctions, he was transferred to Northern Correctional Institution and states that the court must determine whether the conditions there constitute an atypical and significant hardship.  Griffin's transfer to Northern was the result of his classification as a Security Risk Group Safety Threat Member.  The court previously dismissed any claim challenging Griffin's classification.  (See Ruling on Defendants' Motion to Dismiss, Doc. # 24, filed August 18, 2004.)  Thus, Griffin's subsequent confinement at Northern Correctional Institution is not relevant to this claim.  Defendants' motion for judgment on the pleadings is granted on this ground.

IV. Conclusion

The defendants' motion for judgment on the pleadings [**doc. #29**] is **GRANTED**.  Griffin's motion [**doc. #31**] for an order

directing Inmates' Legal Assistance Program to assist him in contacting inmates confined at other correctional institutions is **DENIED** as moot.  The Clerk is directed to enter judgment and close this case.

    **SO ORDERED** this 18th day of May, 2005, at Hartford, Connecticut.

                                          /s/DJS

                                 _____
                                 Dominic J. Squatrito
                                 United States District Judge